NATIONAL CITIZENS BANK OF MANKATO v. JOHN C. THRO.[1]

February 11, 1910.

Nos. 16,456—(144).

**Accommodation Note — Evidence Properly Excluded.**
In an action on a promissory note by the indorsee against the maker,

[1]Reported in 124 N. W. 965.

who executed it for the accommodation of the payee, *held*, the court did not err in excluding certain evidence offered in support of the defense that the indorsee had waived its right to hold the maker by neglecting to collect from the payee.

**Same — Varying Terms of Writing.**

The court did not err in sustaining the objection to evidence of certain preliminary oral agreements with respect to the payment of the note, upon the ground that the same tended to change the terms of a written contract.

**Evidence of Novation.**

There was no evidence reasonably tending to support the defense that a novation had occurred, by which appellant was released, and that a third party had assumed and agreed to pay the notes.

Action in the district court for Blue Earth county to recover on a demand promissory note for $2,000, dated December 21, 1904, and executed by defendant in favor of the Mankato Malting Company. The facts are stated in the opinion. The case was tried before Quinn, J., acting for the judge of the Sixth judicial district, who directed a verdict for $2,231 in favor of plaintiff. From an order denying defendant's motion for a new trial, he appealed. Affirmed.

The answer, in addition to what is stated in the opinion, alleged that, "prior to the organization of the corporation known as the Gopher State Malting Company, this plaintiff solicited this defendant and certain other persons who had executed promissory notes to the said Mankato Malting Company, at the time and at the place and for the purposes for which the promissory note described in the complaint was executed, to organize a corporation for the purpose of manufacturing malt in the city of Mankato, Minnesota, and for the purpose of taking over the plant formerly the property of the Mankato Malting Company and then owned by the plaintiff; that plaintiff represented and promised this defendant and said other parties that, if they would incorporate and take over the said plant, that this plaintiff would finance a new corporation and advance to it all sums of money necessary for the purpose of purchasing grains necessary to keep the said plant running, and that it would advance to said corporation all moneys required by said corporation to make it a going concern so that it could manufacture, sell and ship its product to its full capacity;" that plaintiff failed and refused to perform

any of its agreements with defendant and the other persons it induced to organize such corporation.

*Albert Schaller, Otto Kueffner, A. R. Pfau, Jr.,* and *C. J. Laurisch,* for appellant.

*S. B. Wilson* and *J. H. Eckhardt,* for respondent.

LEWIS, J.

Action upon a promissory note of $2,000, alleged to have been executed on December 21, 1904, by appellant, payable to the Mankato Malting Company, and before maturity indorsed to respondent, National Citizens Bank of Mankato, for a valuable consideration. The answer sets up the defense that the note was executed by appellant, Thro, for the accommodation only of the Mankato Malting Company, and that respondent, knowing that fact, neglected to collect the note from the Malting Company; that after the note became due, and while that company was still solvent, respondent agreed to hold it only upon the note; that in 1908 the Gopher State Malting Company agreed to assume the payment of the note, to which agreement respondent assented. At the close of the evidence the court directed a verdict for respondent for the full amount.

It appears that appellant was one of the incorporators and directors of the Mankato Malting Company, a corporation organized in 1903; that at a special meeting of the directors, held September 25, 1903, a resolution was adopted that the company borrow the sum of $10,000 for the period of six months at seven per cent. per annum; "that for the purpose of obtaining such loan the board of directors of said company, consisting of O. Bierbauer, Nickolaus Petersen, Charles T. Taylor, John C. Thro, and C. L. Benedict, shall each execute a note of Two Thousand Dollars to the Mankato Malting Company, due six months after date, with interest at the rate of seven (7) per cent. per annum, which said notes shall be indorsed by the Mankato Malting Company and negotiated for their face value to obtain such a loan.

"That it is the intention of said Mankato Malting Company to keep in its treasury Ten Thousand Dollars of its preferred stock, and the same shall be held by the Mankato Malting Company as security to

.the said persons so executing said notes, and when any of the Ten Thousand Dollars of said preferred stock is sold the proceeds thereof shall be applied to the payment of said loan."

Appellant executed the note in question, payable to the malting company, and soon thereafter the president of the company offered the note for discount at the respondent bank, and in connection therewith presented to the bank the following certificate:

"MANKATO MALTING CO.
"MANUFACTURERS OF
"HIGH GRADE MALT.

"Mankato, Minn., Oct. 16, 1903.

"This is to certify that the undersigned, O. Bierbauer, president of the Mankato Malting Co., holds Ten Thousand Dollars preferred stock in said company as collateral security to cover five notes, each for Two Thousand Dollars, made respectively by Nick Petersen, C. L. Benedict, Herman Bierbauer, J. C. Thro, Charles T. Taylor. Upon full payment of said notes, certificate of stock shall be issued to each of said makers for the full amount of the note so paid by him.

[Signed]                              "O. Bierbauer, Pres.
                                      "of Mankato Malting Co."

The original note was renewed from time to time until the one in suit was executed December 21, 1904. In 1907 the malting company went into bankruptcy, and its property apparently came into possession of respondent in some manner which the record does not disclose. In April, 1908, the Gopher State Malting Company was organized, with appellant as one of the incorporators and directors, and that company purchased the plant of the Mankato Malting Company from respondent under an agreement in writing which appears in the record.

1. Under the second and third assignments appellant contends that the court erred in excluding testimony offered for the purpose of showing that the indebtedness of the Mankato Malting Company to respondent bank, which amounted to about $100,000, was occasioned by its failure to collect certain bank drafts and bills of lading which had been negotiated by the malting company to the bank, and that as a result thereof the stock of the company became valueless. There

was an allegation in the answer that the bank agreed with the malting company to collect all bills of lading and apply the proceeds on the indebtedness of that company, including the note in question, and the respondent failed so to do, thus causing the company to become indebted in a large amount; that respondent agreed to look to the Mankato Malting Company only for payment; and that appellant had been deceived by respondent's conduct. The court permitted the amount of the company's indebtedness to be shown, but sustained the objection to a question calling for the items, and also sustained the objection to a question to appellant as a witness, calling for a statement of the president of such bank.

We have considered the various assignments directed to these questions, and find them without merit. Appellant was a director of the malting company. Respondent was its banking house, and had extended it credit and discounted its notes and bills of lading. The fact, if it was a fact, that the company became largely indebted to the bank, and that appellant had failed to find it out, had no tendency to prove that the bank waived its right to hold appellant on his note.

2. Referring to the negotiation and arrangement between respondent and the Gopher State Malting Company for the purchase of the Mankato Malting Company plant, the following questions were asked: "What preliminary arrangement was made between the officers of the bank and these former stockholders?" and, "Was there anything in that arrangement relative to the disposal of the notes given by the directors of the Mankato Malting Company under the resolution of September 25, 1903, and the renewal thereof, including the notes now in suit?" These questions were objected to on the ground that it tended to vary the terms of a written instrument and was not the best evidence. Thereupon the contract covering the subject was introduced in evidence. The contract referred to was executed after the Gopher State Malting Company was organized, and appellant insists that the "arrangement" referred to in the questions was an independent prior contract entered into between him and the bank. The written contract was executed April 20, 1908, between respondent bank and the Gopher State Malting Company. The bank sold to the company the plant and real estate of the defendant Man-

kato Malting Company, subject to a bonded debt of $70,000 and certain other indebtedness, for which the company agreed to pay the sum of $63,418 in cash and in semiannual instalments, and also to pay the incumbrances. The bank agreed to apply all amounts paid under the contract upon the claims then held by it against the Mankato Malting Company, "including notes signed or indorsed by individuals." It was conceded that the notes here referred to included the note upon which this action was brought. By the terms of that contract the Gopher State Malting Company agreed to pay the note, but the bank did not agree to release the maker. Appellant claims that the questions were proper, and that the purpose was to show that the bank had, by a prior verbal contract with appellant, released him and agreed to look to the company only for payment.

Conceding that the bank might have entered into such an agreement, the questions objected to were not directed to that point. Appellant was one of the incorporators and directors of the Gopher State Malting Company. So far as the record throws light on the subject, this new company was organized with the hope of resurrecting the business which the Mankato Malting Company had failed in. The same stockholders, largely, were interested. Appellant, with other incorporators, negotiated with respondent for the purchase of the plant. Presumably the written contract covered the subject as to payment and liability on the notes. The question was not followed up by the offer of any specific evidence. The question in itself was not explicit, and when an offer of testimony is made it must be full enough to enable the court to see that it is material. Conlan v. Grace, 36 Minn. 276, 30 N. W. 880; Nichols & Shepard Co. v. Wiedemann, 72 Minn. 344, 75 N. W. 208, 76 N. W. 41; Knatvold v. Wilkinson, 83 Minn. 265, 86 N. W. 99; Veum v. Sheeran, 88 Minn. 257, 92 N. W. 965. The court and respondent's counsel were justified in assuming that the arrangement referred to was in conflict with the writing.

3. The witness Petersen was asked the question: "What representation did the bank make to you, among others, as to financing the institution after it was organized?" Objection was made upon the ground that it was incompetent, irrelevant, and immaterial, and

tended to vary the terms of a written instrument. Appellant claimed at that time, and does now, that respondent company induced the parties to incorporate the new company and to take over the plant, and in consideration thereof the bank agreed to finance it, and, relying upon such promise, the company was formed. If the bank could have been held liable on any such agreement to finance an institution, the pleading was not sufficiently definite. But what we have written with reference to the assignment last above mentioned is applicable here, even if a proper contract was pleaded. The contract between the bank and the Gopher State Malting Company apparently embraced all preliminary negotiations, and unless the particulars of the agreement to finance the new company were specified in the questions propounded to the witness the court was entitled to assume that the entire matter of financing the company was embraced in the written contract, and objection to the question upon the ground that it tended to change the terms of the instrument was properly sustained.

4. The trial court did not err in denying appellant's motion to dismiss the action at the close of the evidence, and was justified in directing the jury to return a verdict for respondent upon the ground that there was no evidence to sustain any of the defenses. The Gopher State Malting Company assumed payment of this note as part consideration for the purchase of the plant of the insolvent Mankato Malting Company; but there is no evidence that respondent agreed to release appellant and hold the Gopher State Malting Company only for payment thereof. Nor is the evidence sufficient to indicate that the time of payment was extended without appellant's consent. The note was renewed from time to time, and the notes of the Gopher State Malting Company were accepted by respondent as a part of the consideration of the purchase of the plant; but the evidence clearly shows that appellant was a party to the organization of the new company, which was for the purpose of succeeding to the business of the Mankato Malting Company and assuming its obligations. Under such circumstances, and in the absence of evidence to the contrary, it cannot be assumed that respondent intended to release appellant from his obligation on the note and look only to the company. Mere delay on the part of respondent to commence an action upon this note until

after the Gopher State Malting Company defaulted in its obligations did not release appellant. Mere neglect to bring suit or make active effort to collect from the principal, even at the request of the surety, is insufficient to discharge the latter. Benedict v. Olson, 37 Minn. 431, 35 N. W. 10; Berryhill v. Peabody, 77 Minn. 59, 79 N. W. 651.

Affirmed.

JAGGARD, J. (dissenting.)

There can be no controversy as to the existence of the rule requiring that the offer to prove must be made full enough to enable the court to see that the proffered evidence was material. The doubt arises as to the invariability of its application. When the objection is so completely discussed as to make the matter clear and to show the materiality of the evidence sought to be elicited by the question asked, the reason for the rule ceases; the rule should not then be invoked. This appears to be the case here. I am unable to resist the conviction that the discussion as to the question involved in the second paragraph of the opinion rendered it a work of supererogation for counsel to make a formal and adequate offer to prove. I therefore respectfully dissent.

O'BRIEN, J. (dissenting).
I agree with Mr. Justice JAGGARD.