THOMAS O'MALLEY v. GREAT NORTHERN RAILWAY COMPANY.[1]

June 13, 1902.

Nos. 12,783—(147).

## Carrier—Limiting Liability.

A common carrier may, by express contract, just and reasonable in its provisions, limit his common-law liability; and contracts entered into for that purpose, fairly and honestly made as a basis for the carrier's charges and responsibility, and not merely to relieve him from the consequences of his negligence or that of his servants, are valid and enforceable.

## Same—Conclusiveness of Contract.

A written contract, purporting to have been entered into for that purpose, is not conclusive upon the question whether it was fairly and honestly entered into, but extrinsic evidence is admissible, and may be resorted to in determining that question.

## Negligence—Verdict Sustained by Evidence.

Plaintiff delivered to defendant a car load of horses to be transported between certain points on its line of railway. In the written contract for their shipment was a stipulation that the value of the horses did not exceed the sum of $50 each, that such valuation was made the basis on which the rate of compensation or freight charges of the company was fixed, and that the liability of the company in case of loss or damage to the horses should not exceed that amount. During the transportation one of the horses was killed by the alleged negligence of defendant's servants in the operation of the train, and plaintiff brought this action to recover the actual value of the horse killed, viz., $125. It is *held* that the question whether the limitation in respect to the liability of the company as to the value of the horses was fairly and honestly made and inserted in the contract as a basis on which defendant's compensation and responsibility was determined was, on the evidence, one of fact for the jury to determine, and that the evidence sustains their verdict. It is also *held* that the evidence is sufficient to sustain their finding that defendant was guilty of negligence causing the death of the horse, and that plaintiff was not guilty of contributory negligence.

Appeal by defendant from an order of the district court for Stevens county, Flaherty, J., denying a motion for a new trial. Affirmed.

[1] Reported in 90 N. W. 974.

W. E. Dodge and E. L. Sutton, for appellant.

Lewis C. Spooner and Marshall A. Spooner, for respondent.

BROWN, J.

Action to recover the value of a horse whose death is alleged to have been caused by the negligence of defendant in transporting the same, with other horses, over its line of railway. Plaintiff had a verdict in the court below, and defendant appeals from an order denying a new trial.

The facts are as follows: Plaintiff delivered to defendant a car load of twenty horses to be transported from Morris, this state, to Foxboro, in the state of Wisconsin. Before reaching the destination, one of the horses was killed, by reason, as plaintiff alleges, of the negligent manner in which the car containing the horses was managed by the servants of defendant. The shipment of the horses was under the terms of a bill of lading or shipping contract in which appears the following stipulation, among others, namely:

"This agreement, entered into on the day above stated between the Great Northern Railway Company of the first part, and Tom O'Malley of the second part, witnesseth: That the said railway company has received from said second party one car load of horses to be transported from Morris, Minn., station to Foxboro station, at the published tariff rate, the same being a reduced rate, given subject to the regulations printed at the heading of this agreement, and upon the terms and conditions following, which are admitted and accepted by the undersigned shippers as just and reasonable; that is to say, * * *. And it is hereby further agreed that the value of the live stock to be transported under this contract does not exceed the following mentioned sums: Each horse, fifty dollars. Such valuation being that whereon the rate of compensation to the railway company for its services and risk connected with said property is based. The party of the first part does hereby declare that this contract was made and entered into by it relying upon the declaration of the party of the second part that the valuations above given are the just and true values of such live stock, and the party of the second part agrees and declares that such valuations are the just and true values of such live stock, and understands and agrees that the party of the first part entered into the contract relying that such values so given are the just and true values of such live stock."

The action was brought to recover the sum of $125 as the value

of the horse, and the defense was: (1) That defendant was not guilty of negligence; (2) that plaintiff's negligence in respect to the manner of loading and caring for the horses during transportation was the cause of the death of the horse in question; and (3) that plaintiff is limited in the amount of his recovery, if entitled to recover at all, to the sum stipulated in the contract as the value of the horse, viz., $50.

It is the generally accepted doctrine of the courts that a common carrier may, by express contract, limit his common-law liability; and contracts entered into for that purpose, when not intended solely as an exemption from negligence of the carrier or his servants, and when otherwise just and reasonable, are very generally sustained. Ray, Neg. Imp. Duties, 34, et seq.; 5 Am. & Eng. Enc. (2d Ed.) 288. If, however, the purpose of such contracts be merely to place a limit on the amount for which the carrier shall be liable, then as to losses resulting from his negligence such limitation is not deemed just or reasonable, and is not binding; but, on the other hand, if the limitation as to the value of the property be fairly and honestly made as the basis of the carrier's charges and responsibility, it is upheld as a just and reasonable mode of securing a due proportion between what the carrier may be responsible for and the compensation he receives, and to protect himself from extravagant and fanciful valuations, whether subsequent loss occurs through the carrier's negligence or not. The law on this subject is very clearly stated in Alair v. Northern Pac. Ry. Co., 53 Minn. 160, 54 N. W. 1072.

The contract involved in the case at bar is very explicit, and clearly comes within the rule laid down in that case. It was prepared by the agent of defendant, and presented to plaintiff for his signature. He signed it, and the agent delivered to him the original, or a duplicate, which he retained. It is claimed from this that plaintiff is conclusively presumed to have assented to the terms and provisions of the contract, and is bound thereby.

The cases sustaining contracts of this kind as valid and binding upon the shipper all hold that the contract in respect to limitations as to the value of the property must appear to have been fairly entered into, and as a basis for the carrier's charges and

responsibility; and where the shipper ·shows by competent evidence to the contrary that he was not aware of the provisions of the contract in that respect, and that the contract was not fairly made, and for the purpose of furnishing a basis for the carrier's charges and responsibility, he is not bound thereby. Rosenfeld v. Peoria, 103 Ind. 121, 2 N. E. 344; Coupland v. Housatonic, 61 Conn. 531, 23 Atl. 870; Kansas City v. Simpson, 30 Kan. 645, 2 Pac. 821; St. Louis v. Clark, 48 Kan. 321, 29 Pac. 312. The construction of contracts of this kind, the nature and extent of the obligations created thereby, and what the parties intended by the language employed, must, when clear and unambiguous, be determined from the writing itself; and extrinsic evidence is inadmissible to contradict or vary the same.

But the question in the case at bar is not what the contract may be construed to be by its language, for there is, and can be, no controversy on that subject. The language is clear and free from doubt, and brings the case fairly within the class of contracts the courts sustain. The question involved is, was the contract, as executed and signed by plaintiff, as respects the limitation placed on the value of the horses, assented to by him? Was the limitation placed therein fairly and in good faith, and was the value so purported to have been agreed upon by the parties intended as a basis for determining the freight charges and defendant's responsibility? In determining this question we are not controlled by the language of the contract; and, though it is clear and unambiguous, and prima facie what it purports to be, the question whether it was made and entered into understandingly and in good faith for the purposes stated, and so as to constitute a contract at all, must be determined from the facts and circumstances surrounding its execution.

For the purpose of showing that plaintiff did not assent or agree to the terms of the contract, extrinsic evidence was admissible, not to contradict or vary its express terms, but to show whether it was fairly and honestly entered into in respect to this particular subject. Boorman v. American, 21 Wis. 154; King v. Woodbridge, 34 Vt. 565; Madam v. Sherard, 73 N. Y. 329; Black v. Wabash, 111 Ill. 351; Erie v. Dater, 91 Ill. 195; Merchants v.

Leysor, 89 Ill. 43; Field v. Chicago, 71 Ill. 458; Boscowitz v. Adams, 93 Ill. 523. The learned trial court submitted the case to the jury on this theory of the law, and they found that the stipulation as to the value of the property was not included in the contract as a fair valuation fixed by agreement of the parties as a basis for freight charges, and returned a verdict for plaintiff for the sum claimed in the complaint, namely, $125.

Whether the evidence was sufficient to sustain the verdict of the jury is the serious question in the case. Perhaps a strong case for plaintiff was not made out, but the evidence fairly and reasonably tends to support the verdict of the jury, and is not so clearly and palpably against it as to justify interference by this court. Plaintiff had loaded his horses into the car, and they were ready for shipment, before the contract was presented to him for his signature. A short time before the departure of the train, —about ten o'clock at night,—plaintiff paid defendant's agent the freight charges, whereupon the agent presented him the contract in question, which he signed without reading or knowing its contents. There were no previous negotiations between the parties in reference to what the contract should contain. No inquiry was made of plaintiff as to the value of the horses, and no representations were made by him in respect thereto. He was not informed that it was necessary that the company know the value in order to enable it to determine the rate of freight to be charged for the transportation of the horses; and it affirmatively appears that their value was inserted in the contract by the agent himself, of his own motion, without consultation with plaintiff, and in accordance with his own estimate of the value of horses in general. There is no claim that the freight charges for shipment were in any way based upon this valuation, nor that charges would have been any higher had the value been greater. We are of opinion that the evidence made a case for the jury. Baltimore v. Brady, 32 Md. 333. See also cases cited supra. The precise question here presented was not involved in Hutchinson v. Chicago, St. P., M. & O. Ry. Co., 37 Minn. 524, 35 N. W. 433.

We have examined the evidence upon the other questions in the case,—whether defendant was chargeable with actionable negli-

gence, and whether plaintiff's negligence contributed to cause the injury complained of,—and conclude that the questions were properly submitted to the jury, and their verdict must be sustained.

Order affirmed.