# MINNESOTA & DAKOTA CATTLE COMPANY v. CHICAGO & NORTHWESTERN RAILWAY COMPANY.[1]

July 23, 1909.

Nos. 16,136—(149).

**Oral Contract — Bill of Lading — Evidence.**

Plaintiff, a shipper of cattle, contended that the time within which defendant, a common carrier, agreed to transport cattle between named points was thirty hours. This contract was oral. Subsequently plaintiff signed a bill of lading in which defendant undertook to carry with reasonable dispatch. Plaintiff's testimony tended to show that the cattle were transported in about thirty-eight hours, whereby the cattle were in poor condition when sold, to his damage. Defendant's testimony tended to show that about an hour's less time was consumed in the transportation and that the time used was reasonable for the distance. The jury found for the defendant. In affirming that verdict it is *held:*

1. The writing constituted the contract of the parties. Possible errors of ruling on evidence pertaining to the oral contract are immaterial.

2. Conductors' reports of train movements made in regular course of employment were properly admitted in evidence; i. e., although such reports themselves had been separated from the stubs or coupons to which they were attached, along a perforated line.

3. The admission or exclusion of evidence which is not strictly in rebuttal, but which is merely cumulative or confirmatory of that put in in the original case, rests primarily in the discretion of the trial court which will be reversed only in case of gross abuse or clear prejudice.

**Time of Train Run — Reasonable Time.**

In plaintiff's original case, witnesses testified that thirty hours was a reasonable time for the transportation here involved; but plaintiff introduced no testimony to show that any freight train "had ever made the run" within that time. Of defendant's witnesses, one testified that he had never known the distance to be covered in that time, and another that "you might get one train in a hundred through like that." Plaintiff then sought to prove that particular shipments of cattle under similar circumstances about the time in question were made within the thirty-hour limitation. This the trial court excluded. No reversible error was committed.

[1] Reported in 122 N. W. 493.

Action in the district court for Brown county to recover $2,000 damages for breach of contract to transport plaintiff's cattle to Chicago within thirty hours. The answer alleged the cattle were transported with reasonable care and promptness. The case was tried before Olsen, J., and a jury which returned a verdict in favor of defendant. From orders denying plaintiff's motions for a new trial it appealed. Affirmed.

*Harrison L. & John W. Schmitt* and *Jos. A. Eckstein* for appellant.
*Brown, Abbott & Somsen,* for respondent.

JAGGARD, J.

Plaintiff and appellant company contended, and introduced testimony tending to show, that defendant orally agreed with it to furnish special cattle trains and to transport certain cattle from Pierre, South Dakota, to Chicago, Illinois, within a period of thirty hours, and guaranteed "a thirty-hour run." Defendant's proof tended to show that the only agreement between the parties was in writing, whereby defendant agreed to transport the cattle between said points with reasonable dispatch, and that of this agreement defendant kept one copy and gave the other to the plaintiff. Plaintiff admitted that its agent was given "some kind of a paper, which he thought to be merely a receipt for the cattle, and a permit for him to accompany the cattle to Chicago, and to free passage back from Chicago to Pierre."

According to plaintiff, about thirty-eight hours were consumed by the company in the transportation. The cattle in consequence had no chance to rest, eat, or drink. On that account they were in poor condition to sell, and when sold weighed less than they would have weighed if the contract for the thirty-hour run had been fulfilled, or if the run had been made within a reasonable time. According to defendant, the time consumed in transportation was thirty-six hours and fifty-five minutes.

At the opening of the trial defendant moved that plaintiff elect to stand upon the alleged oral agreement to transport within thirty hours or upon the written agreement to transport within a reasonable time. The motion was denied. While the trial judge submitted to the jury the question whether or not the thirty-hour agreement was made, he at

the same time instructed them that the written shipping bill contained no provision for a thirty-hour run, and that if the plaintiff's officers signed such a paper the plaintiff could not recover on the oral agreement, even if it was made; but if the jury found that the cattle were not transported from Pierre to Chicago within a reasonable time, on account of the negligence of the defendant, and it appeared that the plaintiff suffered actual damages on account of such negligence, then the plaintiff would be entitled to recover such actual damages. The jury returned a verdict in favor of the defendant. This appeal was taken from the order of the trial court denying plaintiff's general motion for a new trial, and also denying plaintiff's motion for a new trial founded upon accident and surprise and newly discovered evidence.

Two preliminary considerations are important. In the first place, plaintiff could not have properly recovered on the oral agreement to transport within thirty hours. A written contract which provides for transportation with reasonable dispatch is valid and free from legal objections. Cf. O'Malley v. Great Northern Ry. Co., 86 Minn. 380, 90 N. W. 974. The evidence is conclusive that such a written contract was signed, and that one of the copies was delivered to plaintiff and one was retained by defendant. No fraud or mistake was alleged or appeared. Plaintiff's president, who signed the contract, was also the president of a bank, and had had large business experience generally, and with contracts in particular. If there had been a previous oral understanding, it was clearly not competent to prove it in evidence, and thereby contradict the terms of the written agreement. In the second place, the testimony, the review of which in detail would serve no useful purpose, fully justified the jury in finding that defendant exercised due diligence in transporting the cattle with reasonable dispatch. The merits of the controversy are clearly with the defendant.

The first group of assignments of error refers to the exclusion of evidence pertaining to the oral agreement. Plaintiff could not have recovered upon that agreement. The evidence was therefore properly excluded.

Another group of assignments raises the question "as to whether or not conductors' reports of the movements of their trains, transcribed

from their trainbooks, are competent original evidence as to the movements of their trains, especially where it appears that material and important portions of such reports are missing and not accounted for." While in a sense copies, as distinguished from duplicates, the reports were proper evidence, apparently, within the general rule on the subject (Newell v. Houlton, 22 Minn. 19; Webb v. Michener, 32 Minn. 48, 19 N. W. 48; Naas v. Chicago, R. I. & P. Ry. Co., 96 Minn. 84, 104 N. W. 717), but certainly within the extremely liberal rules applicable to records kept in regular course of railway management (Louisville v. Daniel, 122 Ky. 256, 91 S. W. 691, 3 L. R. A. [N. S.] 1190 [train sheet]; Firemen's Ins. Co. v. Railroad, 138 N. C. 42, 50 S. E. 452, 107 Am. St. 517 [train sheet]; Naas v. Chicago, R. I. & P. Ry. Co., 96 Minn. 84, 104 N. W. 717 [in which correct records were held admissible despite the absence of independent recollection]; Donovan v. Boston, 158 Mass. 450, 33 N. E. 583 [train sheets]).

It is quite clear that the exhibits were not mutilated in the sense in which that term is used in the law. The original instrument consisted of two parts separated by a perforated line. The larger sheet was produced. The shorter part or the stub was not produced. This does not constitute mutilation, just as the separation of a check or a receipt along the perforated line from the stub to which it is attached does not constitute a mutilation of the check or the receipt, and as the certificate to the fact of marriage is not mutilated when it is separated from the marriage license. If plaintiff desired to compare the record produced with the separated coupon, and to use any discrepancies between the two, or to explain the sheet produced by the contents of the coupon, the court should have permitted it so to do. If on proper application the court had ignored plaintiff's proper and adequate request to this effect, it might have been error. No such error is, however, here involved.

No reversible error appears in this group of errors for the further reason that the objections do not appear to have been adequate.

It is further urged that, "if it was competent and proper for the defendant to introduce evidence to the effect that in making its schedule for stock trains running between Pierre and Chicago, the shippers

of stock on that line were first consulted, it was certainly proper on rebuttal for the plaintiff, one of these shippers, to show that it was not so consulted." In point of fact the court did permit a witness to testify that shippers of stock had often been consulted, but sustained the objection to the very next question: "What did you say about the time of arrival being set, or not, to the stockman?" The testimony was remote. We are unable, moreover, to perceive how it could have been prejudicial. If the trial court had admitted the evidence, and if it were the defendant who was complaining, Glassberg v. Olson, 89 Minn. 195, 94 N. W. 554, would have been in point. The reasoning of that case, however, would necessitate a present approval of the discretion of the trial court in refusing to admit this evidence as to collateral facts.

Another group of assignments of error raises the question whether or not, under the evidence and issues in the case, it was competent for the plaintiff, in rebuttal, to introduce evidence tending to prove that particular shipments of cattle by special train over the defendant's road, under similar circumstances and conditions, about the time in question, were made within the thirty-hour limitation. Whether, on the theory that the plaintiff could have recovered on the real contract, his present contention was error need not be considered.

The general principles governing the controversy are clear. Two classes of evidence may be received at the stage of rebuttal: (1) Evidence strictly in rebuttal, and (2) evidence not strictly in rebuttal, consisting usually of evidence merely cumulative or confirmatory of that put in on the original case. 10 Enc. Ev. 642. "Whatever is a confirmation of the original case cannot be given as evidence in reply; and the only evidence which can be given as evidence in reply, is that which goes to cut down the case on the part of the defense, without being any confirmation of the case on the part of the prosecution." Rex v. Hilditch, 5 Car. & P. 299, 300, reiterated in Rex v. Stimpson, 2 Car. & P. 415. The order of proof is a slight matter. Blake v. Powell, 26 Kan. 320. As in the modern rules of pleading great liberality is allowed, and the object sought is the attainment of justice, so rules of evidence are not worshipped as a fetich, but are used as mere means to secure a proper determination of the merits of a con-

troversy. It is not necessarily error for the trial court to receive evidence which is strictly in rebuttal. The matter rests primarily in its discretion, which will be reversed only in case of gross abuse. 10 Enc. Ev. 640, 641. Prejudicial error must be made clearly apparent before an appellate court will be justified therein. Atchison, T. & S. F. Ry. Co. v. Phipps, 125 Fed. 478, 60 C. C. A. 314.

The burden rested on plaintiff to make out as a part of the case in chief that the defendant failed to perform its contract of transporting with reasonable dispatch. Plaintiff itself, to show this, introduced the testimony of four witnesses, who had shipped stock for many years over defendant's line between the points here in issue, to the effect that thirty hours was, at the time of this shipment, a reasonable time for such a train as was here involved to make the trip from Pierre to Chicago. Plaintiff says that on behalf of defendant two witnesses testified that it was impossible to make the trip in that time, and that no similar train had made that trip that year in that time, and that to meet the evidence, and to rebut it, plaintiff offered to prove that similar shipments between these points over defendant's road had been made in the fall and summer of 1902 within the thirty-hour limitation.

We have examined the parts of the record referred to. They do not sustain plaintiff's position. The witness Johnson said, not that it was impossible to make the trip in that time, but that he did not know of any exclusive stock train which has run from Pierre to Chicago in less than thirty-four hours. The witness Schevenell "figured" that to make the distance in thirty hours would require the train, during all the time it was moving, to run at the rate of 32.01 miles an hour. He testified that the speed necessary to make the trip in thirty hours would be "extraordinary" for a freight train; that it would not be reasonable in his judgment; that it would be "excessive." Asked, "In your judgment, would it be possible to run a train at that speed?" he answered: "Oh, if your roads and grades—Reduce the grades and supply heavier power, you might get one train in a hundred through like that; but you would be more likely to be 40—45 to 50-hours on the run by reason of delays on account of those hot boxes."

Within these general principles, we are at a loss to perceive re-

versible error in this record. The plaintiff itself urges that it would not have been permitted in its case in chief to have proved that this trip had been made in thirty hours. McCrary v. Chicago, 109 Mo. App. 567, 83 S. W. 82. Gamble-Robinson Co. v. Northern Pac. Ry. Co., 107 Minn. 187, 119 N. W. 1068, does not so decide. If, however, it was admissible in plaintiff's original case, that was the natural time when the proof should have been introduced. From this point of view, its admission or exclusion was discretionary. It was not admissible as strict rebuttal, because defendant did not succeed in proving, or in securing evidence which tended to prove, that it was not possible to have run a train between the points in question in thirty hours; that is to say, the evidence did not deny some affirmative fact which the other parties had introduced evidence tending to prove. Marshall v. Davies, 78 N .Y. 414. Under all circumstances the excluded evidence was not sufficiently prejudicial in fact because of the abundance of evidence appearing in the record as holding that the time in which defendant transported the cattle constituted reasonable dispatch.

We do not here determine whether or not such evidence would have been admissible if introduced by plaintiff in his original case. It is evident, however, that it would not have been of controlling weight. Exceptional performances are not a fair test of what is reasonable dispatch. Defendant aptly says: Proof that Dan Patch paced a mile in 1:55 does not tend to prove that such is the reasonable speed of a horse; nor is proof that some other horse could not pace a mile in four minutes proof that such is reasonable speed.

The authorities to which plaintiff refers us in particular are not necessarily inconsistent with the conclusion here reached. In Ankersmit v. Tuch, 114 N. Y. 51, 55, 20 N. E. 819, it was held that it was not discretionary with the trial court to exclude evidence to impeach or discredit the testimony introduced by opponents. "He may contradict the testimony of a witness as to any matters upon which he has been called to give evidence in chief, provided it is not collateral to the issue. * * *" In the case at bar, however, that other trains had made the trip within thirty hours did not tend to impeach or discredit Johnson, who testified that he did not know that the trip had been made within that time; nor to impeach or discredit Schevenell, because

he did not testify that no such time had or had not been made, but merely that it might be made. In Com. v. Leach, 156 Mass. 99, 103, 30 N. E. 163, the court cited and approved Stephen, Dig. Ev., art. 50, that, "where the opinion of an expert is deemed to be relevant to the issue, facts inconsistent with such opinion became relevant also." There experts had been allowed to testify in chief that it was impossible for anybody to do the particular thing. That opinion was a matter material to the issue on trial. It was held that such testimony may be met by calling a witness in defense to testify that to their own knowledge as a matter of fact the thing had been done. Here, however, our attention has been called to no expression by a witness that it would have been impossible to have made the trip in thirty hours.

In Throckmorton v. Holt, 180 U. S. 552, 563, 564, 21 Sup. Ct. 474, 45 L. Ed. 663, the genuineness of a signature of General Sherman was involved. The trial court excluded the testimony of his son, offered on rebuttal, that certain characteristics were "by no means an unusual feature in the signature of his father." The supreme court said: "Counsel for the proponents could not anticipate what evidence would be given by their opponents, nor what reasons might be offered by a witness as a ground for an opinion against the genuineness of any signature on the paper. * * * In such a case as this, where there was no evidence by the witnesses as to the signature of the party, it became of the greatest importance that no admissible evidence would be excluded when offered upon the question of its genuineness." It was accordingly held that the testimony was admissible as a matter of right. The same distinction pointed out previously serves to differentiate that case; that is, in the case at bar there was no opinion for the proposition which, according to plaintiff's own theory, the evidence excluded was offered to rebut.

Another group of assignments raises "the question whether or not it was prejudicial error for the court to instruct the jury, at the request of the defendant, that plaintiff could not recover in this action on any theory, unless it had proved actual damages." Plaintiff argues "that, if the jury found that there was an oral contract providing for a run not exceeding thirty hours, the defendant was clearly in default, and plaintiff would not be entitled to a verdict for at least nominal

damages, carrying costs." He further insists that the witness fees amounted to over $250, and that the error was not one for the application of the maxim "de minimis." If this be conceded, it is none the less clear that the trial court's attention should have been called to the casual mistake. The case falls within the rule laid down in Stein-bauer v. Stone, 85 Minn. 274, 88 N. W. 754. In any view, the alleged error is governed by Harvey v. Mason City, 129 Iowa, 465, 105 N. W. 958, 3 L. R. A. (N. S.) 973, 113 Am. St. 483.

Finally, plaintiff urges that under all the evidence and circumstances, and upon affidavit formed upon motion for new trial based upon surprise and newly discovered evidence, plaintiff was entitled to a new trial. The matter was within the discretion of the trial court. That discretion was not abused.

Affirmed.