## Glasgow Ice Cream Co. et al. v. Fults' Adm'r.

(Decided Feb. 23 ,1937.)

RICHARDSON & REDFORD and SAM Y. JONES for appellants.

HANDLEY & WILLIAMS for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

While Hallie Fults was engaged in repairing the gas line of his automobile on the highway just north of Hodgenville on December 12, 1935, he was struck and killed by a motortruck. On account of it his administrator has recovered a judgment for $6,000 against G. E. Brown and Claude Brown, partners doing business as the Glasgow Ice Cream Company, and Harold James. They appeal. The defense was that it was not the appellants' truck and the major point relied on for a reversal of the judgment is that the evidence was not sufficient to take the case to the jury on the issue of identification.

Fults was employed at the sawmill of Roy Edwards, and after quitting work pushed his automobile out in front of his brother's residence about 500 feet south of the mill. It was dark and had been snowing. The machine was on the west side of the road, headed north, with the lights burning. Just back of it was another car headed in the same direction and with its lights also turned on. His two brothers were standing by the machine and a sister-in-law was on the porch of the residence 30 or 40 feet away. A motortruck came from the north running 45 or 50 miles an hour and, just before reaching the point, veered to the wrong side of the road and struck Fults with terrific force. He died from the injuries within an hour or so. The three eyewitnesses

are positive that the truck was a Chevrolet with a green body made of slats. The sister-in-law ran screaming after the truck but stopped at the mill and described it to Edwards, who went immediately to town and had an officer telephone to another at Buffalo, a town about five miles south of Hodgenville, to stop all trucks. A deputy sheriff there did stop seven of them, but none was a green Chevrolet.

Information was received that a truck was involved in a wreck at the entrance of the Lincoln Farm, three miles south of Hodgenville. The appellants' truck had there collided with another going in the opposite direction. It appears that the machine was then over in a field, but the body was on the highway. It was a green rack, made of slats, exactly fitting the description given by the witnesses of that which had struck Fults, except that the rear end was only a solid drop leaf about 18 inches high instead of being of slats like the sides. There was no blood upon the motor bed, but Edwards found a piece of cloth about the size of a dime hanging on the threaded end of a bolt which protruded within a countersink or bored hole in the frame. The attention of several men was called to this bit of fabric and it was carefully preserved and introduced in evidence. The decedent was wearing a heavy coat with a kind of leather covering and cloth lining which was considerably torn when he was struck. This, too, was preserved and also produced at the trial. The jury examined the two exhibits with a microscope. It also inspected the frame of appellee's truck. A section of that frame on which the cloth was found, as well as the other exhibits, have been brought to this court for our inspection.

Harold James, the driver of his coappellants' truck, was taken into custody a short while later. An officer testified that he slept "right smart of the time" he was in his office, and said:

"I am so damned sleepy I can't hold my eyes open; I haven't had my clothes off for 48 hours."

He further stated in substance that he had taken a load of tobacco from Glasgow to Louisville the night before and had gone back with another load that day. He stated that if he had hit anybody with the truck he didn't know it. The court admonished the jury that this evidence was received against the defendant James only and was not to be regarded against the other defendants.

James denied those statements, and testified that he was sleepy only because he was sitting before a fire in the sheriff's office. It was proved by the defendants that he had been in Louisville the day before with a load of tobacco, but had returned home and gone to bed at 6 o'clock the previous evening. He had risen at half past 5 that morning and made another trip to Louisville. The truck he was driving was controlled by a governor which prevented it running faster than 35 miles an hour. On his way home that evening James had given a negro named Johnson a ride. He remembered having passed the parked cars with the lights burning, but insisted that he was on the right side of the road and had not struck any one there or elsewhere. Going on south he had had the collision with the other truck. He remembered that before that accident a truck had passd him going in the same direction. After the wreck at the Lincoln Farm, James helped to move some tobacco baskets which had fallen from his truck into the road and then caught a ride back to Hodgenville. He first went to a drugstore and then to a hotel, where he called his employer at Glasgow to tell him of the wreck. It was after this that he learned he was charged with having struck Fults. The defendants' affidavit as to what the negro Johnson would testify if present was read before the jury as his testimony. It corroborated James.

A very important factor in the case is the time the fatal accident occurred. The witnesses for the plaintiff fixed the time as between 6 and 6:30 o'clock. Their best estimates, based upon the time the men at the mill quit work at 6 o'clock, were that the accident occurred close to 6:15. The defendants' evidence was that the collision with the other truck, about 4 miles beyond, occurred between 5:30 and 5:45 o'clock. It is of record, made at the time, that James began talking over the long distance telephone to Brown at Glasgow at 6:26, and Brown fixes the time in its relation to a popular radio program which begins at 6:30. This record of the telephone company affords very positive evidence of the time, for it is a logical rule that an unimpeached writing is to be accepted rather than oral evidence based upon memory. Duff v. May, 245 Ky. 709, 54 S. W. (2d) 4. From the undisputed facts in reference to what James did and the distance he necessarily had to travel after the collision at the Lincoln Farm, one or the other of two things is

manifestly true, namely, either the truck he was driving did not strike Fults, or the witnesses were mistaken from 15 to 30 minutes in their estimate of the time it occurred. Inasmuch as the thing uppermost in their minds was the fact of the tragedy being enacted before their eyes, exactness of time ought not to be expected. While it may have been the custom of the mill to close down at 6 o'clock, this was in midwinter, in bad weather, long after dark, and it is not unusual for men thus employed to quit work a few minutes earlier under such conditions. A few minutes difference in watches may also be in part accountable. At any rate, we as a court of review are not willing to say that this discrepancy in time is of such a controlling character as authorizes us to set aside the verdict of the jury on the issue of fact of the identification of the appellants' truck.

It is not to be understood that the appellants rest their argument upon this discrepancy alone. They argue that there was ample opportunity for the truck which killed Fults to have parked in town or have gone in another direction out of Hodgenville, hence it could not have been stopped at Buffalo; that the nondescript bit of cloth was not identified by any competent witness as being from or of the same character as the lining of the deceased's coat; and, furthermore, that it is not persuasive because within the distance traveled it would have been blown away by the wind. The further point is made that there was no blood on the truck, while there was on the automobile of the deceased by which he was standing when struck, nor any scars on the body of the truck. Special reliance is had upon Poll v. Patterson, 178 Ky. 22, 198 S. W. 567, in which was involved the identity of an automobile which scared a horse and caused an injury to one riding in a buggy. Regarding the evidence as affording only a conjecture and as containing nothing of a substantial probative nature, it was held that a peremptory instruction for the defendant should have been given. The rule as to the quality of evidence necessary to take a case to the jury as therein defined has been consistently adhered to, but it does not seem to us to be applicable to the facts of this case. Nor is the conclusion in Spencer's Adm'r v. Fisel, 254 Ky. 503, 71 S. W. (2d) 955, that a directed verdict was properly given, decisive in this case. There was involved not only the identity of a truck, but conceding it to have been

one belonging to the defendant, there was no evidence tending to show that it was at the time being operated by an employee acting within the scope of his authority or in furtherance of the employer's business. The latter point of liability is not involved in this case. In Huber & Huber Motor Express v. Martin's Adm'r, 265 Ky. 228, 96 S. W. (2d) 595, there was conflicting evidence as to the identity of a truck causing a personal injury by colliding with another machine, and, although the records of the defendant showed that none of its trucks were anywhere in the locality of the accident, yet we held the issue was properly submitted to the jury. We so regard this record.

The court submitted the issue of contributory negligence. It seems to us this was as much as the defendants were entitled to, for by no means can we regard the fact that the deceased was engaged in working on his car on the highway as constituting negligence as a matter of law. The statute invoked (section 2739g-48) is that no person shall leave a motor vehicle standing upon the main-traveled portion of a highway except under certain conditions. There is no evidence that the deceased's car was on the paved, traveled part of the road. It seems to us the instruction given took care of any question of the deceased's contributory negligence in being on the highway in such position that perhaps the lights of his and his brother's car shining ahead obscured his presence to the approaching traffic.

The argument is made that the only competent way to have proven that the picee of cloth found on the defendants' truck was a part of the lining of the decedent's coat sleeve was by some witness possessing sufficient experience and knowledge as to be able to express an expert opinion. The finding of the fabric was detailed, and as stated it was filed as an exhibit for examination by the jury in comparison with the coat. No witness for the plaintiff was asked for an expression of opinion. One answered that he saw Edwards get from the truck "a little piece of cloth that looked like the lining of a coat," but it was not responsive and cannot be regarded as prejudicial. Conceding that it would have been competent for a witness expert in the knowledge of textiles to have expressed an opinion on this matter, the failure to produce such an expert did not render the introduction of the objects themselves improper. Perhaps such

evidence would have been helpful, but it was, as it always is, the jury's duty to find the ultimate fact. Both exhibits were simply submitted for inspection that the jury might reach its conclusion from their similarity or identity. It seems to us that the nature of the exhibits put them in that class of objects regarded as within the commonplace knowledge of every one. Without assuming any superior knowledge, we may add that our examination of the two exhibits is convincing of their identity. The authorities relied upon by the appellants relate to the character of witnesses qualified to express opinions upon various conditions and the comparison of things not within the common, ordinary knowledge of the average juryman. In Paden v. Rockford Palace Furniture Company, 220 Ill. App. 534, cited by appellants, a witness related that he found a piece of a blue shirt near where an injured boy's cap was found and added that it was "just the same kind." The court struck that from the answer as not being responsive. The ruling was held proper, the appellate court observing that it was not shown the witness had sufficient knowledge upon which to base an opinion. The case does not seem to be in point, for the articles testified about were not before the jury for their inspection. It seems to us that the evidence on this trial was properly admitted without expert testimony as to the similar or identical quality of the exhibits.

We think the criticism of the instruction as assuming that the appellants were the owners of the truck which struck and killed Fults is not meritorious. The directions to the jury that under the circumstances outlined they might find for the plaintiff was conditioned upon the belief from the evidence that James was driving a truck that struck and killed the decedent. It was undisputed that the truck which the plaintiff endeavored to prove had killed Fults was driven by James and that it belonged to his codefendants and was being operated at the time by him in the course of his employment. The instructions are models of excellence.

Perceiving no error prejudicial to the substantial rights of the defendants, the judgment is affirmed.