## ZOLTON v. ROTTER.

1. EVIDENCE—CIRCUMSTANTIAL—WEIGHT FOR JURY.

Circumstantial evidence in support of or against a proposition is equally competent with direct evidence and as against each other their relative convincing power is for the jury.

2. SAME—UNCONTRADICTED STATEMENTS—WEIGHT FOR JURY.

A jury need not accept every uncontradicted statement as true.

3. WITNESSES—CONFLICTING TESTIMONY—CREDIBILITY FOR JURY.

Where the testimony of various witnesses as to material fact is in conflict, the credibility of the witnesses is for the jury to determine.

---

* Continued from Vol. 320.

### REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am. Jur., Evidence, § 1189.
[2] 20 Am. Jur., Evidence, § 1180.
[2] Disregarding uncontradicted testimony in civil actions. 8 A.L.R. 796.
[3] 53 Am. Jur., Trial, § 282.
[5] 5 Am. Jur., Automobiles, § 660.
[5] Circumstantial evidence, admissibility to show identity of automobile or driver. 99 A.L.R. 756, at p. 788.
[5] Condition of automobile or parts thereof after accident as evidence bearing on responsibility. 129 A.L.R. 438.
[6] 16 Am. Jur., Death, § 243 et seq.
[6] Excessive or inadequate damages for injuries resulting in death. L.R.A.1916C, 820; 48 A.L.R. 817, 834.
[7] 16 Am. Jur., Death, § 177.
[9] 16 Am. Jur., Death, § 47.
[9] Consortium, loss of, as element of damages for wrongful death. 74 A.L.R. 11.
[9] Measure of damages for death of married woman in action for benefit of estate. 7 A.L.R. 1314, at p. 1334; 26 A.L.R. 593, at p. 599; 163 A.L.R. 253, at p. 260.

(1)

4. AUTOMOBILES—IDENTITY OF DEFENDANT'S CAR—GREAT WEIGHT OF EVIDENCE.

In action against motorist who was claimed to have killed plaintiff's decedent, a pedestrian, while the record indicates there was a doubt whether defendant's automobile was the one involved in the accident, jury's finding that it was so involved was not against the great weight of the evidence.

5. SAME—IDENTITY OF DEFENDANT'S CAR—EVIDENCE—WEIGHT FOR JURY.

In action against motorist for fatal injuries to pedestrian, a broken piece of grill from defendant's car, found three days later some 41 feet from the scene of the accident, was admissible to show identity of automobile involved in the accident, its probative value being for the jury.

6. DAMAGES—DEATH OF 21-YEAR-OLD MOTHER—EXPECTANCY OF LIFE.

Verdict of $10,000 *held*, not excessive for death of 21-year-old woman who had an expectancy of 41.53 years, whose husband had an expectancy of 40.85 years, who left a 15-months-old son, had been in good health and capable of earning, and was a good wife, mother, housekeeper, and cook.

7. DEATH—DAMAGES—SUPPORT.

Although under the death act, as amended, recovery of damages is limited to those persons entitled to support, recovery is not limited to the amount of support actually received (3 Comp. Laws 1929, § 14061 *et seq.*, as amended by Act No. 297, Pub. Acts 1939).

8. SAME—DAMAGES—CHILDREN.

The death act, as amended, is at least as broad in protecting recovery on behalf of minor children as before amendment (3 Comp. Laws 1929, § 14061 *et seq.*, as amended by Act No. 297, Pub. Acts 1939).

9. SAME—LOSS OF WIFE'S SERVICES.

Under the death act, as amended, a husband is still entitled to recover for loss of his wife's services, apart from any earning capacity which she may or may not have had (3 Comp. Laws 1929, § 14061 *et seq.*, as amended by Act No. 297, Pub. Acts 1939).

Appeal from Saginaw; Sanford (Joseph F.), J., presiding. Submitted January 7, 1948. (Docket No. 19, Calendar No. 43,571.) Decided April 5, 1948. Rehearing denied May 18, 1948.

Case by Lawrence Zolton, administrator of the estate of Dorothy Zolton, deceased, against Carl Rotter for damages resulting from death of decedent. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Walter Martin* and *Duane S. van Benschoten,* for plaintiff.

*Stanton, Montgomery, MacKenzie & Cartwright,* for defendant.

BOYLES, J. This is an automobile accident case tried by jury, resulting in a verdict of $10,000 damages for death of plaintiff's decedent. The principal contention upon which the defendant-appellant relies for reversal is that the verdict was against the great weight of the evidence in that the evidence failed to establish that it was the defendant's automobile which was involved in the accident. The plaintiff relied on a multitude of facts and circumstances to identify the defendant's automobile as the one involved, and the defendant relies on a claim that direct testimony proves the contrary. The locus of the case and the circumstances of the accident can best be indicated by the map included herewith.

Some of the facts are undisputed. Plaintiff's decedent, Dorothy Zolton, was 21 years of age at the time of the accident, married, with a son 15 months old, both in good health. Her husband was in the armed forces overseas, and she had been employed at a forge plant during part of the time since marriage. About 9:30 o'clock on the night of January 8, 1944, she started out from the Hilborn house on Paines road with two girl companions, Ruth and Phyllis Hilborn, walking north on the west side of Paines road, west of the center line and facing traffic, to go to the village of Shields a short distance

north. There was no sidewalk. Dorothy Zolton was nearest the center line, Ruth walked beside her close enough to touch her, and Phyllis a few steps behind them. There was plenty of room for northbound traffic to pass them on the east side of the 18-foot pavement. Ruth noticed the reflection of automobile lights approaching them from the south, looked around and saw an automobile coming behind them. No horn was sounded and she did not see the automobile again until after it struck Dorothy Zolton, who was hit by the left front of the automobile, thrown into the air and instantly killed. The automobile swerved back into the east lane of the pavement and did not stop or slow down but went on north and turned east at the stop light, onto Gratiot road. The accident occurred near the Weidman home, about one-fifth mile south of the intersection of Paines road and Gratiot road at the stop light. Ruth Hilborn saw the car as it went on, and testified that it looked like a black or real dark car, with two tail lights at the back, a license plate in the middle and a light above it. Ruth Hilborn, at that time 17 years of age, did not drive an automobile, could not tell the makes of cars, testified it looked like an old 1935 Buick, like a flat (perpendicular) trunk at the back, and thought it had four doors. When the accident was re-enacted a short time later she said the defendant's car was not the one, but she also said she was not sure and that at night they all looked the same.

One Richard Rouse runs a garage and gasoline pumps on Gratiot road about a block north and one block east of the place where the accident occurred. He knew the defendant and the defendant's car, and testified it was a 1940 Oldsmobile maroon coupe; that at 9:45 on the night in question a 1940 Oldsmobile maroon coupe stopped in front of his pumps.

He testified:

"*Q.* Mr. Rouse, do you know whose car that was that stopped in front of your house that night? * * *

"*A.* In my own mind, I think it was Mr. Rotter's. I am sure."

He testified that the right headlight was burning but the left one was not. Mr. Rouse was in his house and did not go out. He saw the car "back up to clear the pumps and start away." The car went east and turned south on Adams road, toward defendant's home. The time would approximately correspond to the length of time it would take to drive north from the scene of the accident, turn east on Gratiot road at the stop light and arrive at the Rouse garage. Three days later a county detective picked up a piece of broken radiator grill off the shoulder of Paines road about 41 feet north of the place where plaintiff's decedent's body was thrown. Defendant admits it came from his automobile. Two wool fibers were found, one caught underneath the setscrew at the top of the left front parking light and the other wedged underneath the chromium trim at the top of the left headlight of defendant's automobile, which were of the same color and texture as the fibers of the coat plaintiff's decedent was wearing when struck. Within a few minutes after the accident on Saturday night someone from the sheriff's department picked up pieces of glass from seal beam headlights near the place where Dorothy Zolton was struck. The next Monday morning the defendant had both broken seal beam headlights replaced at the private garage of his employer. On the same day, defendant had a large dent on the hood of his car knocked back into place, at another garage. On Tuesday, the defendant went to a garage and had his grill, fender and bumper pushed back into position with a hydraulic jack, and placed an order for a new grill and fender. On the same

day, defendant also had his radiator repaired. On Wednesday, officers found defendant's automobile parked on the property of defendant's employer in such a way that the front could not be seen from the street, with a broken grill and showing fresh damage on the left front. More length than necessary to decision would be required to detail other facts from which inferences might be drawn that the defendant for several days after the accident was attempting to conceal the fact that his car had been involved in an accident.

The defendant admits that his car was damaged on the left front sometime on the Saturday on which the accident occurred but claims this was due to a truck or trailer backing into it on that Saturday afternoon, at the parking lot of the freight company where he worked. On Saturday, January 8th, about 6:00 p.m., the defendant and his wife went to McCarthy's tavern at the corner of Paines road and Gratiot road, and remained there until about 9 o'clock. There was testimony that when he left he let them know there that he was going home "about the children," but would be back. This, he denies. He and his wife returned to their home, which is south of the scene of the accident. He testified that he did not leave home again that evening, but admitted that at about 9:30 he went outside his home, alone for about 15 minutes, but testified this was to feed his chickens and gather the eggs. He admitted that no one else ever drove his car, except himself. The red fibers found on the parking light and underneath the trim of the headlight of defendant's car could have come from a red snowsuit his daughter wore. There were discrepancies in the identifying of defendant's car by plaintiff's witness, Ruth Hilborn. The light at the license plate was below, not over, the plate. It was not a four-door automobile. Ruth did not identify the car positively

as the defendant's car, although she testified correctly it was a dark, shiny car, had the two tail lights, and a license plate in the center, at the rear. There were pieces of glass from headlights, and other pieces of broken grill from defendant's car, picked up at other places along Paines road. The damage to defendant's car might have been caused at his employer's lot, as he testified. However, there was no positive testimony to that effect. The defendant testified that his wife noticed the damage to his car, Saturday afternoon. She testified that she noticed nothing much wrong with it other than old small dents, until Monday.

The question here is whether the verdict is against the great weight of the evidence. Defendant claims that positive testimony must prevail over circumstantial evidence. Such is not necessarily the law. Cases cited by the defendant from other jurisdictions may readily be distinguished as to facts and circumstances of each case. The correct rule of law in this State is stated in *Ricketts* v. *Froehlich,* 218 Mich. 459, 461, as follows:

"Circumstantial evidence in support of or against a proposition is equally competent with direct. As against each other their relative convincing power is for the jury. The trial court apparently assumed that defendant's direct denial must be taken as true against all circumstantial evidence introduced.

" 'To hold that in all cases when a witness swears to a certain fact the court must instruct the jury to accept that statement as proven, would be to establish a dangerous rule. Witnesses sometimes are mistaken and sometimes unfortunately are wilfully mendacious. The administration of justice does not require the establishment of a rule which compels the jury to accept as absolute verity every uncontradicted statement a witness may make.' *Yonkus*

v. *McKay*, 186 Mich. 203, 210 (Ann. Cas. 1917E, 458);
citing *Woodin* v. *Durfee*, 46 Mich. 424."
To the same effect, see *Cuttle* v. *Concordia Mutual*
*Fire Ins. Co.*, 295 Mich. 514; *Buttermore* v. *Faleris*,
304 Mich. 294; *Wingett* v. *Moore*, 308 Mich. 158;
*Anderson* v. *Kearly*, 312 Mich. 566.

The trial court submitted to the jury as a ques-
tion of fact, whether the defendant's automobile was
the one involved in the accident. The credibility of
the witnesses was for the jury to determine. The
record indicates that there was a doubt whether the
defendant's automobile was the one involved in the
accident. However, we cannot say that the verdict
was against the great weight of the evidence.

Appellant claims reversible error in admitting tes-
timony of the finding of a broken piece of the grill
three days after the accident, 41 feet north of the
scene of the accident. Defendant's automobile had
passed this point immediately after plaintiff's de-
cedent was struck. Appellant relies on *Billingsley*
v. *Gulick*, 252 Mich. 235, in which the judgment was
set aside and a new trial granted for other reversible
errors. The facts plainly distinguish that case from
the case at bar. There the testimony was received
to show the location of an accident. Here the broken
piece of grill was admitted in evidence to show the
identity of the automobile which was involved in
the accident. The probative value of such testimony
was for the jury. *Pearce* v. *Rodell*, 283 Mich. 19;
*Wallace* v. *Kramer*, 296 Mich. 680.

Appellant claims the damages were excessive. The
expectancy of life of plaintiff's decedent was 41.53
years, and that of decedent's husband 40.85 years.
She had a minor son 15 months of age, was in good
health and capable of earning. The testimony shows
she was a good wife, housekeeper and cook, was
pleasant and gave her son good care. The amount
of damages was within the range of the proofs in

the case. Appellant relies on *Gembolis* v. *Rydeski*, 258 Mich. 521, but in that case a verdict for $10,000 for death was held not excessive. Although, under the death act, Act No. 38, Pub. Acts 1848 (3 Comp. Laws 1929, § 14061 *et seq.* [Stat. Ann. § 27.711 *et seq.*]), as last amended by Act No. 297, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 14061 *et seq.*, Stat. Ann. 1947 Cum. Supp. § 27.771 *et seq.*), recovery is limited to those persons entitled to support from decedent, recovery is not limited to the *amount* of support actually received. The amended act is at least as broad in protecting recovery on behalf of minor children as the original act. *Bricker* v. *Green*, 313 Mich. 218, 226, 227 (163 A. L. R. 697). And in spite of the rule just stated, a husband is still entitled to recover for loss of his wife's services, apart from any earning capacity which she may or may not have had. *In re Olney's Estate*, 309 Mich. 65, 84; *Grimes* v. *King*, 311 Mich. 399, 414, 415. In the latter case $8,535.33 was awarded for death of a 42-year-old childless wife. Damages were given both for loss of services and for loss of earning capacity. The verdict in the instant case was not excessive.

The judgment is affirmed, with costs to appellee.

Bushnell, C. J., and Sharpe, Reid, North, Dethmers, Butzel, and Carr, JJ., concurred.