CLYDE VAN TASSEL v. A. L. PATTERSON.
CARLTON PARRISH v. SAME.
MINNEAPOLIS VAN & WAREHOUSE COMPANY v. SAME.[1]

November 23, 1951.

No. 35,445.

[1]Reported in 50 N. W. (2d) 113.

*Meagher, Geer & Markham,* for appellants.

*Faegre & Benson, Paul J. McGough,* and *John A. McEachron, Jr.,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Three actions for damages and personal injuries arising out of an automobile accident which occurred October 10, 1947. The cases were consolidated for trial, and at the close of the evidence the court granted defendant's motion for a directed verdict in each case on the ground that plaintiffs had failed to establish that defendant's car was involved in the accident. Plaintiffs have appealed from orders denying their separate motions for a new trial.

Defendant concedes that if the evidence establishes that his car was the one involved in the accident the question of his negligence is properly one for the jury. We are asked to determine, then, whether the court erred in holding the evidence insufficient to establish this fact, and whether it erred in sustaining an objection to the testimony of plaintiffs' witness Fern Pfeiffer called in rebuttal, based on the ground that her testimony would in substance impeach that of plaintiffs' other witnesses.

The facts are as follows: On October 10, 1947, plaintiff Carlton Parrish was employed by plaintiff Minneapolis Van & Warehouse Company, a corporation, as driver of the latter's tractor-trailer unit. Plaintiff Clyde Van Tassel was likewise employed by plaintiff corporation on that date to assist Parrish in his work. Between 4:30 and 5 p. m. that day, the tractor-trailer driven by Parrish, accompanied by Van Tassel, en route to Minneapolis from Carver, collided with the viaduct abutment on the south side of highway No. 169 immediately east of its intersection with Interlachen Boulevard and Brookside avenue near southwest Minneapolis. The accident occurred as a result of Parrish's effort to avoid striking a car claimed to be defendant's, which abruptly entered highway No. 169 from Brookside avenue from the left and just in front of the tractor-trailer. As a result of the impact, plaintiffs Parrish and Van Tassel were injured and the tractor-trailer unit of the warehouse company was damaged, giving rise to these three actions.

The described intersection comprises the junction of the three highways mentioned. Highway No. 169, which extends approximately east and west at this point, is 27 feet wide and constructed of concrete. It contains three traffic lanes. As it passes over the viaduct, it widens to 40 feet between the sidewalk curbs thereof. Brookside avenue extends in a north-south direction and crosses highway No. 169. Interlachen Boulevard is to the north of highway No. 169 and to the west of Brookside avenue. It extends in a northwest-southeast direction and merges with Brookside avenue some 50 feet before they jointly intersect highway No. 169. It does not cross highway No. 169, but ends at this point.

As the tractor-trailer approached this intersection from the west, a dark-colored sedan entered highway No. 169 from Brookside avenue from the north and just west of the viaduct. It proceeded across highway No. 169 until it reached the south lane thereof, at which point it turned to the left to travel in an easterly direction directly in front of the tractor-trailer unit. Believing that a collision between the tractor-trailer and the car was about to result, plaintiff Parrish, to avoid it, first set his trailer brakes, then ap-

plied his tractor brakes, and turned the tractor-trailer slightly to the right, whereupon it struck the south abutment near the southeast corner of the viaduct.

There was no contact between the vehicles, but it is plaintiffs' claim that defendant's car came into highway No. 169 in front of the tractor-trailer so quickly that plaintiff Parrish was forced to swerve it to his right to prevent a collision with defendant's car.

On the issue of identification, the evidence submitted may be summarized as follows: Parrish testified that at a point approximately 85 to 100 feet west of the intersection he saw a car coming up the highway from his left on Brookside avenue; that he was then driving approximately 30 miles per hour; that the car described came "right out on the pavement" in front of him; that he first thought it was going to cross highway No. 169; that when it was "probably ten foot" in front of the tractor-trailer its driver turned to his left and proceeded down the right lane of highway No. 169 immediately in front of the tractor-trailer; that in consequence he (Parrish) turned sharply to his right off the highway and hit the viaduct abutment as described; that had he not done so the tractor-trailer would have struck the car; that the car was dark-colored, black or green—an old car, a Dodge or Chrysler make; and that the only other car in view at the time was a car parked to the right on the approach to highway No. 169 waiting to enter it.

Defendant admitted that he turned onto highway No. 169 from Brookside avenue as the tractor-trailer approached the intersection just before the accident; that when he first saw it it was 400 to 450 feet to his right; that he was driving a 1937 Dodge sedan, dark green in color; that, after observing the tractor-trailer and believing that he had sufficient time to avoid a collision with it, he proceeded into highway No. 169 and turned into the south lane thereof to travel east; that he did not look again in the general direction of the tractor-trailer after first observing it; that he heard the crash of the tractor-trailer as it struck the abutment to the rear of his car; that he saw the car parked on the south approach to highway No. 169 waiting to enter it; that when he heard the crash he pulled

over to the south shoulder of highway No. 169, stopped his car, and walked back to the accident; that he waited there for a time, but did not give his name to anyone; that he observed no other car entering highway No. 169 or traveling on it in either direction from the time that he entered it from Brookside avenue until he heard the crash; that three days after the accident Arthur Compton, president of plaintiff corporation, called upon him and, after identifying himself, asked him if he knew anything about the accident; that he replied that he had not been in any accident; that "nobody has hit me and I haven't hit anybody." According to Compton's testimony, defendant refused to give him his name, but later admitted to Compton that he had been at the scene of the accident, had driven his car into highway No. 169 in front of the tractor-trailer, had stopped it after the crash and returned to the tractor-trailer, but had not given his name to anyone. After defendant's conversation with Compton, defendant said that he reported his connection with the accident to the Edina police department.

Ray S. Harp, called by plaintiffs, testified that shortly prior to the accident he stopped his car on Brookside avenue just south of highway No. 169 preparatory to entering it and driving east thereon; that as he came to a stop he observed a car approaching highway No. 169 from the north side on Interlachen Boulevard and a tractor-trailer coming from his left and proceeding east on highway No. 169; that the car on Interlachen Boulevard stopped, then proceeded to enter highway No. 169, and continued until it reached the south lane thereof, at which point it turned to the east thereon; that as it entered highway No. 169 the tractor-trailer was approximately 75 to 100 feet west of Harp's car; that the driver of the tractor-trailer sounded the horn, and Harp heard the application of its brakes; that it turned off the highway and struck the viaduct abutment almost in front of him; that the car which came from Interlachen Boulevard was a 1937 or 1938 Dodge or Plymouth, dark in color, either a sedan or a coach; that he observed a car parked to the west of Interlachen Boulevard approximately 130 feet back from the intersection and another car parked at the oil station pumps just

east of the point where Interlachen Boulevard and Brookside avenue merge; and that he observed no other cars traveling on highway No. 169 or entering it at the time.

Mike Nallick, called by plaintiffs, testified that he was the operator of a "Phillips 66" station just north of the curve where Interlachen Boulevard and Brookside avenue merge to the north of highway No. 169; that at the time of the accident he was attending a car; that a loud squeal from tires or brakes caused him to turn around quickly, at which time he observed the tractor-trailer on highway No. 169 and an old, dark-colored sedan about 20 feet in front of it; that at the time he observed it the car was about in the center of Brookside avenue as it crosses highway No. 169 and in the south lane of highway No. 169; that the tractor-trailer and this car were the only moving cars at the time; and that after the accident he did not observe the car stop.

Arthur Compton, president of plaintiff corporation, testified that about three days after the accident he located defendant where he was working as a house painter a short distance from the intersection; that defendant then denied that he had had any connection with the accident and refused to give his name; that shortly thereafter on this same occasion defendant admitted that he had been at the scene of the accident; that he then advised Compton that he had turned his car to the left in front of the tractor-trailer; and that he had heard the crash, stopped his car beyond the viaduct, and returned to investigate the accident. As has been stated, defendant testified that at this time he did not leave his name with anyone.

Wayne Tracy, called by defendant, testified that at the time of the accident he was standing near the pumps at the Phillips station, above described, facing east; that the sound of a horn first attracted his attention; that he then turned to his right and observed a dark-colored 1939 sedan entering highway No. 169 from Brookside avenue; that he turned farther to his right and saw another car "coming off Interlachen onto the highway"; that he turned still farther to his right and observed another car behind the car on Interlachen Boulevard; that he then observed the tractor-trailer; that he saw

all of this practically at one time; that both the car coming onto highway No. 169 from Brookside avenue and the one coming onto it from Interlachen Boulevard continued easterly without stopping after the accident; and that the tractor-trailer "hit its brakes" at the time the car from Interlachen Boulevard was entering the bridge, just before it struck the viaduct abutment.

■ Defendant asserts that the trial court properly directed a verdict because "plaintiffs failed entirely to sustain the burden * * * of proving that defendant was involved in this accident." He argues that the only testimony which would support plaintiffs is that of Carlton Parrish, and that the latter's testimony falls within the general rule expressed in Hanson v. Homeland Ins. Co. 232 Minn. 403, 405, 45 N. W. (2d) 637, 638, that "if the evidence *as a whole* so overwhelmingly preponderates in favor of a party as to leave no doubt as to the factual truth, he is entitled to a directed verdict as a matter of law, even though there is some evidence *which, if standing alone,* would justify a verdict to the contrary."

■ The recited rule is to be cautiously and sparingly exercised. It does not permit either this court or a trial court to pass upon the credibility of witnesses, to weigh evidence, or to exercise any discretion, except in those extreme cases where the evidence so overwhelmingly preponderates as to leave but one factual conclusion possible. See, Kundiger v. Prudential Ins. Co. 219 Minn. 25, 17 N. W. (2d) 49.

■ We do not think the rule applicable here. If it is to be applied, we must ignore the positive definite testimony of plaintiff Carlton Parrish, on the ground that it was entitled to no credibility in view of the other evidence in the case. Examination of the testimony of the other witnesses, as above outlined, leads rather to the opposite conclusion. Therefrom it appears that Parrish, in a large measure, was corroborated by every other witness called to give testimony on this issue, with the exception of the witness Tracy, who alone indicated that more than one car was entering highway No. 169 shortly before the accident.

. The defendant and the witnesses Nallick and Harp all testified that they observed but one car enter highway No. 169 in front of the tractor-trailer. The general description of this car, as given by various witnesses, was closely applicable to defendant's car. It is true the witness Harp indicated that the car involved was entering highway No. 169 from Interlachen Boulevard rather than from Brookside avenue. It is to be noted, however, that Interlachen Boulevard and Brookside avenue merge and form one highway shortly to the north of and as they enter highway No. 169. A jury might logically consider this in endeavoring to harmonize Harp's testimony with that of the other witnesses testifying on this issue. Considering all of these factors, we feel that there was ample corroborative evidence to remove the testimony of the plaintiff Parrish from the provisions of the rule above expressed and to present a fact question for the jury on the issue of identification. On evidence far less substantial than that presented here, it has frequently been held that the issue of identification was for the jury. See, Mickelson v. Kernkamp, 230 Minn. 448, 42 N. W. (2d) 18; Lowen v. Pates, 219 Minn. 566, 18 N. W. (2d) 455; Noltmier v. Rosenberger, 131 Minn. 369, 155 N. W. 618; Painter v. Davis, 113 Minn. 217, 129 N. W. 368. See, also, Glasgow Ice Cream Co. v. Fults' Adm'r, 268 Ky. 447, 105 S. W. (2d) 135; Frasciello v. Baer, 304 Mass. 643, 24 N. E. (2d) 653; Zolton v. Rotter, 321 Mich. 1, 32 N. W. (2d) 30; Batts v. Joseph Newman, Inc. 3 N. J. 503, 71 A. (2d) 121; Hanson v. Weber, 234 Wis. 593, 291 N. W. 800; Gary v. Consolidated Forwarding Co. (7 Cir.) 115 F. (2d) 632.

We must further conclude that the testimony of the witness Fern Pfeiffer was properly admissible in rebuttal. Up to the time of the testimony of the witness Tracy, no one called, either by plaintiffs or defendant, had testified that more than one car had entered highway No. 169 as the tractor-trailer approached this intersection. The witness Tracy, however, testified that first a car entered highway No. 169 from Brookside avenue, and that it was followed therein by another car from Interlachen Boulevard. Plaintiffs then called the witness Pfeiffer in rebuttal. After an objection to

her testimony as improper rebuttal was sustained, counsel for plaintiffs offered to prove by her that she had "observed a car coming off from Brookside Avenue immediately before the truck struck the bridge, and that they [this car and the tractor-trailer] were the only two vehicles in the vicinity at the time of the occurrence of the accident."

It is clear that such testimony would have constituted a rebuttal of the testimony of the witness Tracy; hence, it was proper. Rebuttal evidence is that which explains, contradicts, or otherwise refutes defendant's evidence. Its purpose is to cut down defendant's case and not merely to confirm that of plaintiff. Luck v. Minneapolis St. Ry. Co. 191 Minn. 503, 254 N. W. 609; Mathews v. C. & N. W. Ry. Co. 162 Minn. 313, 202 N. W. 896; Minnesota & Dakota Cattle Co. v. C. & N. W. Ry. Co. 108 Minn. 470, 122 N. W. 493. It does not appear that it would constitute an impeachment of plaintiffs' other witnesses. Each of them had testified that only one car entered highway No. 169 and that no other cars were observed traveling on it at the time. Such facts appear consistent with Fern Pfeiffer's proposed testimony and indicate that she may have brought her car to a stop just subsequent to defendant's entry into highway No. 169. Lundgren v. Union Ind. Co. 171 Minn. 122, 213 N. W. 553, 52 A.L.R. 580; Nelson v. Bullard, 155 Minn. 419, 194 N. W. 308.

Reversed and new trial granted.

MR. JUSTICE CHRISTIANSON took no part in the consideration or decision of this case.