### Shoemaker v. Commonwealth.

(Decided January 26, 1923.)

### Appeal from Clark Circuit Court.

Criminal Law—New Trial.—The trial court erred in refusing a new trial to the defendant, convicted of murder, where after the trial two witnesses for the Commonwealth learned and confessed that their evidence was untrue, and their evidence was such as may have induced the verdict, without regard to whether or not de-

fendant presumably knew of and could have introduced other evirence than he did to contradict it.

C. F. SPENCER and J. F. WINN for appellant.

CHAS. I. DAWSON, Attorney General, and MARTIN T. KELLEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

The indictment herein charges the appellant and his brothers, Hobert and Herbert Shoemaker, with having murdered their father, that appellant shot and killed him with a shotgun, and that the brothers were present and aided and assisted therein. They were first tried together and the jury disagreed. Thereafter appellant, being tried separately, was convicted and his punishment fixed at life imprisonment in the penitentiary.

The single error assigned for reversal is the refusal of the court to grant appellant a new trial upon the fifth ground asserted in his motion therefor. That ground in substance is, that since the trial two witnesses for the Commonwealth have acknowledged that their evidence on the trial was given under a misapprehension of the facts and is untrue, and that this is a fact is proven not only by the affidavits of these two witnesses but by so called record evidence as well.

It is unmistakably established, and the Commonwealth concedes, that the evidence given by these two witnesses on the trial is not true, and if it was of such a character that the verdict of guilty may have been induced thereby, it is apparent defendant did not have a fair trial, and the court should have granted him a new trial, unless he lost his right thereto by failure to avail himself of the record evidence, as is contended for the Commonwealth.

In order to appreciate the probable effect of this evidence upon the jury, it will be necessary to recite briefly the substance of all the evidence:

The decedent was killed in the kitchen of his home, on August 8, 1921, in the forenoon, by appellant shooting him twice with a shotgun, one shot entering his back and making a wound about an inch and a quarter in diameter just below the shoulder blade and about an inch and a half to the right of the spinal column. It went straight in, except that it ranged slightly downward, and came so near going through his body that it caused a blackened protrusion in the front lower abdomen.

The other shot struck decedent in the mouth, and tore away a partion of the lower jaw. Either shot was sufficient to have caused almost instant death.

After the shooting appellant went to the home of his mother-in-law, some four or five miles distant, where he remained without telling any one of the occurrence until he was arrested late the next day, and he then denied prior knowledge of the killing, or any knowledge of how or when it occurred. The two brothers, Hobart and Herbert, were present when the difficulty occurred, but according to their testimony, they ran out of the house just before the shooting, and waited near the barn until defendant came to where they were. They then went to the home of their sister, less than a mile distant, where they remained that night without telling anybody about the affair.

The next morning one of the boys went to the home of a neighbor, and accompanied him and another to the home of the father, where they found him dead upon the floor of the kitchen. There was no evidence in the room of any struggle, and there were no weapons found upon the body of the deceased or in the room. The door of the kitchen had been left open, and a number of chickens were about the body when it was found.

For about three months prior to the difficulty, appellant and his wife had lived in two of the four rooms in the house and decedent had lived in the other two. Appellant testified that on the Friday before the killing he and his wife had gone to her mother's home because of her fear longer to live in the house with decedent; that defendant had returned each day to the house to feed his hogs, two calves and about 60 or 70 chickens he had left there; that on the morning of the difficulty he went to the house for the purpose of feeding his stock, and that on the way he stopped at his sister's home and his two brothers joined him there. That they found the father in a small shack in his watermelon patch near the house; that the two brothers went to the shack where the father was, and he proceeded to the house to do his feeding. That he then went to the shack, and his father accused him of intending to go to law about the division of a crop they had jointly raised, and threatened to kill him if he did so. That he assured his father he had no such intention, and would give him the whole crop rather than have trouble with him; that the father continued to curse and abuse him, and he left, going to the house where he re-

mained for two or three hours, and until he saw his father and brothers coming toward the house. That as they approached he heard his father cursing and threatening to kill him, and hurriedly made a search in order to remove any weapons from his father's reach; that he discovered a shotgun of his brother's under his father's bed, and taking this up with the intention of going out of the house with it, he started to go out through his father's kitchen, but that his father had already gotten into the kitchen, and seeing him, started toward him with a drawn pistol in one hand and a dirk in the other, saying: "I've got you just where I want you." That his father struck at him with the dirk and pointed the pistol at him, and that he shot only because he believed it was necessary to save his own life. That after he shot the first time, his father continued to advance and again struck at him with the dirk; that in the scuffle he turned his father to one side, and shot a second time. That the first shot struck his father in the face, and the second in the side or back.

The two brothers corroborate the defendant in every detail, except that they say they fled just before the shooting began, and that they do not know how it occurred but heard the two shots fired. They also testified that after the difficulty between appellant and the decedent at the shack in the watermelon patch, they tried to pacify their father and thought they had succeeded in doing so; that they played cards with him on a cot in the shack until just before the difficulty, when he began anew to curse the appellant, and putting his pistol in his pocket, started toward the house, saying that he was going to kill him.

In rebuttal, and near the close of the trial, the Commonwealth introduced the sheriff, Clay Hodgkin, and his deputy, Dan Insko, who testified that at the examining trial Hobart and Herbert Shoemaker had testified that while they were eating some onion sandwiches at the table in the kitchen, their father was standing with his back toward the door into an adjoining room, at which appellant appeared and without warning shot his father in the back, and as he fell, shot him a second time in the mouth.

This is the evidence about which complaint is made, and which these two witnesses now acknowledge is untrue, as they have realized after examining the minutes

of the examining trial and refreshing their memories about the matter.

The court, in admitting this evidence, admonished the jury that it was competent only for the purpose of affecting the credibility of the witnesses, Hobart and Herbert Shoemaker, and that it should not be considered by them as substantive evidence against the appellant. Laying the ground for the introduction of this evidence, the Commonwealth had asked Hobert and Herbert Shoemaker if they had not made these statements in their testimony at the examining trial, and both had denied doing so.

Assuming for the moment that the jury were able to and did consider the evidence of the sheriff and his deputy only as affecting the credibility of the witnesses, Hobart and Herbert Shoemaker, it could not have had less effect upon the members of the jury, it seems to us, than to have destroyed utterly the value of the evidence of these witnesses in sustaining, as otherwise it did, the testimony of the appellant that he had shot and killed his father in his necessary self-defense.

The fact that the appellant inflicted two such wounds upon his father, left the body as he did, told no one about it, and when arrested denied knowledge of it, that no weapons were found on or about the body, as well as some other minor circumstances, furnish such strong circumstantial evidence that the killing was not done in self-defense, that in order that he might have a fair trial it was essential that he be afforded a fair opportunity to establish that plea, if true, and to this end it was absolutely necessary that he should not be wrongfully deprived of the benefit of the evidence of the only eye-witnesses to the difficulty which immediately preceded the homicide.

It therefore seems to us a necessary conclusion that, having been wrongfully deprived of the benefit of the evidence of such witnesses, it cannot be said that he had a fair and impartial trial.

Not only so, but we are convinced that the jury, despite the admonition of the court, could not have helped but give to the evidence of the sheriff and his deputy not only the effect of destroying utterly the value of the testimony of Hobart and Herbert Shoemaker as corroborative of appellant's testimony of self-defense, but that, under the circumstances, they necessarily must have

given to it value as substantive evidence, and may have considered it the true explanation of how the killing really occurred.

In any view, although untrue as we now know, it was necessarily very damaging to appellant's plea of self-defense, may have been sufficient of itself to completely destroy it, and, in our opinion, prevented him from having a fair trial.

Section 271 of the Criminal Code not only empowers the court to grant a new trial upon an issue of fact for named reasons, but where "from any other cause the court be of the opinion that the defendant has not received a fair and impartial trial."

Obviously this provision was inserted in this section of the Code for the very purpose of enabling the court to grant a new trial where a fair trial was prevented by such unusual circumstances as this record presents, and which the legislature could not anticipate and define, as are the usual grounds specifically set out therein.

It results that the court erred in refusing defendant a new trial, unless as urged for the Commonwealth, because of his failure to introduce at the trial the minutes of the evidence heard at the examining trial, which shows that the sheriff and his deputy were mistaken in saying, and that Hobart and Herbert Shoemaker were correct in denying, that upon that trial they testified differently than upon this trial.

That there is no merit in this contention for the Commonwealth is apparent, since by section 64 of the Criminal Code it is expressly provided that the minutes of the examining trial cannot be introduced as evidence for any purpose. See also Wilson v. Commonwealth, 54 S. W. 946, 21 Ky. L. R. 1333.

Neither is there any merit in the further contention of the Commonwealth that the defendant should have shown the minutes of the examining trial to the sheriff and his deputy for the purpose of refreshing their memories, and thereby have induced them to retract their testimony before the trial ended, as they did afterwards when confronted with these minutes. This contention is based upon the assumption that they would have retracted at once—which may or may not be true—and upon the further assumption that the minutes of the examining trial were a public record and their contents presumably within the knowledge of the defendant.

Even if we assume this to be true, which is at least doubtful, we would have to assume by the same rule that the Commonwealth knew the same facts, and by that rule the Commonwealth would be convicted of having suppressed the truth and purposely introduced false evidence to destroy defendant's defense, which is of course not true, but which if true surely would have entitled him to a new trial.

In any view, it certainly would be extremely unfair to place upon defendant, with his life and liberty at stake, the whole responsibility and burden of this mishap which prevented him from having a fair trial, and for which he was in no wise responsible.

Wherefore, the judgment is reversed and the cause remanded for another trial.