## Shepherd v. Commonwealth.

(Decided Feb. 9, 1937.)

CHARLES B. SPICER for appellant.

B. M. VINCENT, Attorney General, and J. J. LEARY for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

As is recited in Shepherd v. Commonwealth, 264 Ky. 235, 94 S. W. (2d) 606, George Shepherd was convicted of manslaughter and sentenced to ten years' imprisonment on the charge of killing George Lee by striking him with a motor truck in the late afternoon of De-

cember 24, 1934. His motion and grounds for a new trial had not been acted on when the regular term of court closed. The motion·was overruled·at a special term. On the same day a supplemental motion and grounds was filed. The court was of the opinion that he was without authority to consider these additional grounds, but in his order indicated an impression of merit. That order and the one overruling the original motion were reversed because the court was without authority to enter them at the special term without notice or agreement. The case was remanded that the trial court might pass upon both the original and supplemental motions. Upon a return, additional grounds were submitted. The motions were in due course overruled and Shepherd again appeals.

As is further recited in the former opinion, the conviction of the appellant was upon the testimony of three witnesses, namely, Pittman, who stated he was with the defendant on the truck at the time, Lankford, and Creech, who testified they were with Lee when he was killed. These men were shown to be of bad reputation. Lankford and Creech had served penitentiary terms for robbery and housebreaking. Quite a bit of evidence was introduced to show they were elsewhere than where Lee was run over. There was evidence that Pittman had tried to get money from the defendant's friends not to testify against him. Although the officers had been investigating the death of Lee, it appears that Pittman told no one about what he claims to have seen until the following August. Meanwhile, Shepherd, who was a deputy sheriff, had put Pittman off the premises of his employer because of drunkenness and disorderly conduct. Neither of the other two men had disclosed what they claimed to have seen until about the same time.

The defendant proved that at the time Lee was killed and for several hours before and afterward, he was at work as a clerk in the store of a coal company some distance away and that the truck said by the prosecuting witnesses to have been the one that struck the decedent had not returned from a place in Virginia where it was sent that day. The defendant was sustained by a great many witnesses. There was evidence also that it was a passenger car and not a truck that

had run over Lee and that it was operated by a man who was known to the witnesses only as "Gus."

After the trial, each of the three witnesses, Pittman, Lankford, and Creech, made affidavits that his testimony was false and he had been induced to give it under the promise and hope of receiving a reward, which had been offered by the decedent's father for the arrest and conviction of the one who had killed his son. Pittman added that he had done so for revenge on account of the way Shepherd had treated him. Creech and Lankford further stated that Pittman had procured them as witnesses and Lankford deposed that the decedent's mother had given all of them money to keep them drunk both before and during the trial. The affidavit of Bill Rose was to the effect that he and Lankford were released from jail on the afternoon of December 23d, and had remained together, going here and there drinking, until 8 o'clock on the night of December 24th, when he left Lankford at the mouth of Poor Fork because he was too drunk to walk farther. Frank Sizemore corroborated Rose by deposing that the men ate supper at his house up Nolan's Branch and left his house about 7 o'clock. G. G. Rawlings, an attorney, made affidavit that after the trial Pittman, Lankford, and Creech were angry and inquired of him if there was any way to compel Lee's father to pay them for the reward he had offered, and that Creech stated if he had known Lee was not going to pay them the reward he would not have given the testimony he gave; further, that if he were not afraid of the consequences he would change his testimony. Another witness, Harris, who had testified to having seen Pittman with Lee on the truck, made affidavit that since looking at Shepherd's truck he believed he had been mistaken.

The commonwealth filed counter affidavits of those who had been mentioned in the affidavits of the three men as having induced them to give false testimony denying the charges. There were others showing that the retractions had been procured by the defendant's friends by grossly improper and corrupt practices. It was also shown by these affidavits that at least Pittman was very drunk when he made the affidavit of retraction.

Later on, Pittman, Lankford, and Creech under examination on oath before an examiner severally re-

tracted their retractions and deposed that the evidence given on the trial was true and they had been induced by different means and persons to give their former affidavits while they were drunk.

After the case was remanded, an additional ground for a new trial was filed, namely, that one George Day had been indicted for having killed Lee by striking him with his automobile. The court postponed ruling on the motion for a new trial until after Day had been tried. His order recites that Day was found not guilty. A transcript of the evidence heard on that trial was made a part of the record in this case by the court, sua sponte, to be considered in connection with Shepherd's motion and appeal. On Day's trial the three witnesses to whom we have referred got back to their original stories and testified that Shepherd and not Day was the man. But there was enough testimony as to Day's guilt to take the case to the jury. Yet, there were disclosures of perjury and subornation on that trial.

In his order the court makes reference to his difficulties and quandary arising from this display of corruption and false swearing. While overruling the defendant's motion for a new trial, in effect he passes the question up to this court with an expression of doubt. For this reason, the rule that great consideration is accorded the action of the trial court on a motion for a new trial based upon newly discovered evidence, or for other causes of a general nature, loses its force.

Ordinarily, a new trial will not be granted for newly discovered evidence impeaching in its nature or cumulative. Yet, when it seriously affects the testimony of the sole or all of the prncipal witnesses upon whose testimony it is manifest the conviction was had, and it is reasonably certain that had the evidence been heard, it would probably have induced a different conclusion by the jury, the recognized exception to the rule—always to be administered with caution—becomes operative. Hensley v. Commonwealth, 241 Ky. 367, 43 S. W. (2d) 996; Elkins v. Commonwealth, 245 Ky. 199, 53 S. W. (2d) 358.

In Shoemaker v. Commonwealth, 197 Ky. 416, 247 S. W. 376, 378, the appellant had been convicted of kill-

ing his father. Two brothers had corroborated his claim of self-defense. A sheriff and a deputy testified that these two witnesses had testified on the examining trial to certain facts which instead of supporting had completely destroyed their brothers' claim. After the trial, the officers deposed that their evidence had been given under misapprehension and was untrue. Their retraction was supported by record evidence as to what the two brothers had actually testified on the examining trial. Although the court had admonished the jury that the evidence was to be considered only as affecting the credibility of the other witnesses, yet it seemed to us that the effect was nevertheless to destroy utterly the value of their evidence, which was all the defendant had to support his defense. It was inescapable that the false testimony prevented him having a fair trial. Referring to the provisions of section 271, Criminal Code of Practice, authorizing the granting of a new trial, for "any other cause" leading to the conclusion that the defendant has not received a fair and impartial trial, we said:

"Obviously this provision was inserted in this section of the Code for the very purpose of enabling the court to grant a new trial where a fair trial was prevented by such unusual circumstances as this record presents, and which the Legislature could not anticipate and define, as are the usual grounds specifically set out therein."

An extraordinary condition demands extraordinary action. Some of the testimony of the three claimed eye-witnesses was unnatural. They were contradicted in part by some undisputed physical facts and other statements. Their bad character was in part revealed. Over against that testimony there was produced by the defendant testimony substantial in quality and quantity. Thus we have a close case submitted to the jury. When by subsequent developments the sordid nature of these men was revealed more surely and clearly—as by showing themselves willing to swear any way according to the circumstances and influences—the danger of there having been a conviction of an innocent man became pronounced. We are of the opinion that fairness and justice requires a reversal of the judgment that the defendant may have another trial and that the entire

situation may be placed before the jury. We reserve decision on all other questions raised.

Judgment reversed.