## Davis v. Commonwealth.

May 26, 1942.

746

P. H. Vincent for appellant.

Hubert Meredith, Attorney General, and Jesse K. Lewis, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

Alvin H. Davis appeals from a judgment of conviction of uttering a forged check and penalty of four years' imprisonment. His sole ground for reversal is that the verdict is not supported by the evidence.

Perry Scott testified that on Saturday evening of August 30, 1941, a stranger came to his place of business and inquired about buying 100 day-old red chicks. Being told that he would not have any until Tuesday, the stranger stated that he would pay for them and his wife would later call for them. He presented a check purporting to be signed by the treasurer of the United Power Gas Company, payable to A. W. Johnson, for $22.75. It had the

appearance of a payroll check. Scott deducted $10 for the chickens and gave the man the balance of $12.75 in cash. The check was forged. Scott described the man as wearing khaki trousers and shirt and a brown hat. In November following he identified Davis in jail at Huntington, West Virginia, as the man who had passed the check. Orville Felty, a customer in the hatchery at the time, talked with the stranger and testified that he was apparently a mill worker (like himself) and was dressed in blue overalls, although he was not positive as to that as he had not paid much attention to him. Felty testified that it was hard to do so but that he had identified Davis as the man when he had been brought to the Ashland jail. On the trial Felty qualified his identification as being "the best I can say." Although Scott had testified that the man had endorsed the check, no effort was made by the commonwealth to identify Davis's handwriting either by having him write the same name for comparison or by producing specimens of his handwriting and expert opinion.

The defendant testified that he had been a clerk all his life and that on August 30, 1941, he was at a Veterans' Home at Johnson City, Tennessee, where he had gone on August 11th and stayed until September 22nd. By agreement, the affidavits of the assistant manager and captain in charge of Barracks No. 6 at the Veterans' Home were read as their depositions. These men thus testified that the records of their institution showed the defendant Davis was in his barracks on the night of August 30, 1941, and that he had been doing detail work that day as a window washer. He had been admitted to the Home on August 11th and remained until September 22nd and was not absent during that period except on over-night passes August 15th and 16th and September 4th. These witnesses stated they had no interest in the case. The record stands admitted without suspicion or question.

An alibi is not an affirmative defense (Edmonds v. Commonwealth, 204 Ky. 495, 264 S. W. 1100), but only a fact shown in rebuttal, and the burden of proving the primary fact or allegation of guilt beyond a reasonable doubt remains upon the commonwealth. In this case, to sustain that burden, the commonwealth undertook to prove the guilt of the accused by evidence of identification by strangers who saw him only once and who had no

reason to observe him particularly or remember his characteristics and personality, some three months later. There was some discrepancy in their description of the man, and one of them admitted a lack of positiveness. The more certain evidence of handwriting comparison was available but it was not presented. In support of the defendant's alibi there was an admittedly correct registry of a current event kept by an institution of the United States Government and made by quasi military officers in the performance of their official duty. Records made in due course, particularly by a person or agency wholly independent of the parties to a transaction, criminal or civil, are within the best evidence rule, which requires the highest grade of evidence obtainable to prove a disputed fact. When such a record is presented, verbal testimony as to the same thing becomes secondary. Glasgow Ice Cream Co. v. Fults' Adm'r, 268 Ky. 447, 105 S. W. (2d) 135. The fallibility of memory, especially as to personal identity, brings the verbal testimony even into a lower scale of value and forcefulness.

The commonwealth's case was not fully developed. Neither was the defendant's side, which perhaps was because of his poverty and confinement in jail. His own affidavit that if given an opportunity he could prove that on August 31st he telephoned his mother from and cashed a telegraph money order in Johnson City, Tennessee, was not sufficient to authorize a new trial upon the ground of newly discovered evidence because of lack of diligence and absence of support by the affidavits of the proposed witnesses. Grubbs v. Commonwealth, 240 Ky. 473, 42 S. W. (2d) 702; Hatfield v. Commonwealth, 248 Ky. 342, 58 S. W. (2d) 634. But this suggests the possibility of more definitely establishing his defense upon another trial.

We do not question the honesty of purpose or sincerity of belief of the witnesses for the prosecution, but it is very easy to make a mistake in identity, particularly where there was only a casual observation. Thus, in Fry v. Commonwealth, 259 Ky. 337, 82 S. W. (2d) 431, where there was positive identification by the commonwealth's witnesses of a man accused of the crime of armed robbery, resulting in his conviction with life imprisonment as the penalty, we reached the conclusion the defendant's alibi was so forcefully and overwhelmingly established that in the interest of justice it required a re-

versal of the judgment upon the ground that the verdict was flagrantly against the evidence.

Ordinarily this court, as other appellate courts, will not interfere with the verdict where there is substantial testimony to support it. This usually involves the quality as well as the quantity of the evidence, the credibility of witnesses and the weight to be accorded their testimony being regarded as outside the province of the reviewing court. But where the verdict is against the weight of the evidence, as where the jury disregarded a defense which was almost conclusively established, we have not hesitated to reverse the judgment resting upon it. The rule or its application does not admit of precise definition or limitation. Each case is resolved into a matter of judicial discretion in exercising the inherent power of every court to see that a man's fundamental rights are protected in every case. State v. Garcia, 19 N. M. 414, 143 P. 1012. This is not to be found in our Code of Criminal Practice or Statutes, but is firmly established as a part of the jurisprudence of the state. Privitt v. Commonwealth, 271 Ky. 665, 113 S. W. (2d) 49. However, this is a well guarded exercise of power and it will never be used in aid of strictly legal, technical or unsubstantial claims. The principle upon which the authority and action rest is thus well stated in 8 R. C. L. 218, based upon State v. Bartlett, 43 N. H. 224, 80 Am. Dec. 154:

"It is deemed in our law better that many guilty persons escape than that one innocent person should suffer. This maxim, obviously, is not founded upon any technical rule or system of pleading, but is based upon broad principles of humanity, which forbid the infliction of punishment until the commission of the crime is to a reasonable certainty established. It has received the sanction of the most enlightened jurists in all civilized communities, and in all ages; and with the increasing regard for human life and individual security, it is quite apparent that the energy of the rule is in no degree impaired."

An appellate court ought to be sensitive to the realities, and if it believes there may have been a miscarriage of justice it should use its extraordinary power and reverse a judgment that there may be a fuller development of the facts so that the guilt of the accused, if he is guilty, may be more certainly determined.

As stated in Shepherd v. Commonwealth, 267 Ky. 195, 101 S. W. (2d) 918, 920, in connection with the granting of a new trial upon newly discovered evidence which was cumulative:

> "An extraordinary condition demands extroardinary action. * * * We are of the opinion that fairness and justice requires a reversal of the judgment that the defendant may have another trial and that the entire situation may be placed before the jury."

Wherefore the judgment is reversed.