Allen RAYBURN, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Feb. 4, 1972.

Sam F. Kibbey, George P. Stavros, Ashland, for appellant.

William B. Arthur, Commonwealth's Atty., Ashland, John B. Breckinridge, Atty. Gen., Robert V. Bullock, Asst. Atty. Gen., Frankfort, for appellee.

GARDNER, Commissioner.

Appellant was convicted and received a sentence of two years for detaining a woman against her will with intent to have carnal knowledge of her, a crime de-

nounced by KRS 435.110. Under a separate indictment appellant was convicted and received a sentence of eight years for burglary, a crime denounced by KRS 433.120(1). The two charges grew out of the same set of facts and were consolidated for trial. The error appellant assigns for reversal is that there was insufficient evidence to support conviction in either case. More specifically he contends (1) (as pertains to the detaining charge) there is no substantial evidence that appellant detained the prosecuting witness or that if he did detain her he did so with intent to have carnal knowledge of her, (2) (as pertains to the burglary charge) there is no substantial evidence that appellant entered the house for the purpose of committing a felony, and (3) he was not identified with evidence of sufficient probative value to warrant submission to the jury of his being the intruder.

The prosecutrix, Shirley Penix, arrived at her home about 10:30 p. m. from her work as a waitress in the Henry Clay Coffee Shop in Ashland. She was alone in the house. She changed into her night clothing. Her Dalmatian dog started barking and Shirley went to the back porch and scolded the dog, but he kept on barking. As she went back into the house she "saw a shadow go by my bedroom window." After performing a few chores she noticed the dog was still barking. She looked out the window and saw a white sports car parked on the road not far from her house. Later she went to her bedroom, looked out the window and saw a man outside with a coat pulled over his head. She called to ask what he wanted but the man made no reply. She said she would call the police and went to the phone in the kitchen. By the time the policeman answered the man had forced open the back door and was coming toward Shirley. She picked up a glass and threw it at him, apparently missing. The kitchen table was between her and the man. In her own words Shirley testified:

"I had the phone in my hand. I was trying to tell the police where I was at and my address and things, but I couldn't tell the police because he was trying to get to me. I was going one way and he was trying to get a hold of the phone to take it out of my hand. As he was coming one way, I would drag that kitchen table with me. I got around to the upper end of the table, he got a hold of my left shoulder and when he got a hold of my left shoulder, I have a fruit dish in the center of my table and I come down with that fruit dish down over his head with all the strength I had, I guess, because it broke into, I don't know how many pieces and when I did, the coat dropped. The man was humped up real short like, low, so he could have his coat down and when I hit him with that fruit dish, the coat came down and when he did, I seen the man and he turned just the way he was humped over and when he turned, I seen a hammer handle sticking out of his back pocket and I still had the phone in my hand then and he turned and went right back out the same door."

The police arrived within a few minutes. At approximately 2 o'clock the next morning appellant, while driving a sports car identified as a Karman Ghia, was arrested by the police.

▮▮▮ Appellant maintained that on the night in question he was in Ironton, Ohio, at the Town Tavern from 9:30 p. m. until 12:40 a. m. An array of apparently disinterested witnesses supported his alibi. Appellant argues that the testimony of the alibi witnesses was so conclusive that it vitiated the identification of the appellant by Shirley. Although a verdict may be set aside where evidence that the accused was at some other place at the time of the commission of the crime overwhelms trifling testimony to the contrary (Fry v. Commonwealth, 259 Ky. 337, 82 S.W.2d 431 (1935); Davis v. Commonwealth, 290 Ky. 745, 162 S.W.2d 778 (1942)), the instant case is not in that category. Shirley outspokenly stated that appellant was her assailant. She corroborated the statement

with impressive facts showing the likelihood of the truth of her statement. In the first place she saw appellant's face at close range in the kitchen when his coat fell from his head. Shirley stated that she had ridden several times as a passenger in appellant's taxi. She recalled having a conversation with appellant during one of the rides relative to her daughter's buying a used car belonging to a relative of appellant. Her description of the type and color of his clothing fitted the clothing appellant was wearing when he was arrested. He was found driving a white sports car similar to the one Shirley said was parked near her house. Shirley testified she saw a hammer handle in her assailant's pocket. A hammer was found underneath the seat of appellant's car. We believe there was ample evidence of identification to require submission of that question to the jury.

 Appellant was convicted of violating KRS 435.110 which provides: "Any person who unlawfully takes or detains any woman against her will, * * * with intent to have carnal knowledge of her * * * shall be confined in the penitentiary for not less than two nor more than seven years." Appellant insists that there was no evidence of his attempting to have sexual intercourse with the prosecutrix, and therefore, the judgment should be reversed. The statute does not require an overt act indicating an attempt to have sexual intercourse. We stated in Russell v. Commonwealth, 298 Ky. 241, 182 S.W.2d 773 (1944), "To constitute an offense under the statute, there must be both the detention against the will of the prosecutrix and the intention of the accused to have carnal knowledge of her, but it is not essential that there be physical force." Cf. Jones v. Commonwealth, 121 Ky. 266, 89

S.W. 174 (1905). It is recalled that appellant, after standing outside Shirley's window about 11 o'clock at night while she was in her night clothing with no one else present, burst open the door and started toward Shirley. He chased her around the table and grabbed hold of her arm. She struck him over the head with a fruit dish. It cannot be seriously argued that she was not detained. What were his intentions? Only appellant has the complete answer but, as we have written many times, the intentions of an accused may be ascertained from the surrounding facts and the jury is allowed a reasonably wide range in which to infer intent from the circumstances. Russell v. Commonwealth, 298 Ky. 241, 182 S.W.2d 773 (1944); Nerren v. Commonwealth, 268 Ky. 715, 105 S.W.2d 838 (1937). The evidence was sufficient to sustain the verdict on the detaining charge.

 The burglary charge was prosecuted under KRS 433.120(1). The statute does not define burglary. At common law burglary is the breaking and entering at nighttime of another's dwelling with intent to commit a felony therein. Most of the discussion and reasons for the holding relative to the detaining charge are apropos of the burglary charge. Appellant broke open the door at nighttime. As stated above there was sufficient evidence to warrant submitting to the jury the question of whether he detained Shirley with intent to have carnal knowledge of her. The jury found that he did, thus determining that he intended to commit a felony. We believe the evidence was sufficient to sustain the verdict on the burglary charge.

The judgment is affirmed.

All concur.