**Kevin E. SMITH, Appellant,**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

Court of Appeals of Kentucky.

March 3, 1978.

Terrence R. Fitzgerald, Deputy Public Defender, Louisville, for appellant.

Robert Stephens, Atty. Gen., Patrick B. Kimberlin, III, Asst. Atty. Gen., Frankfort, for appellee.

Before COOPER, HOWARD and PARK, JJ.

COOPER, Judge.

This is an appeal from a judgment in the Jefferson Circuit Court wherein the appellant was found guilty and convicted on one count of armed robbery pursuant to indictment No. 152413. His punishment was fixed by the jury, and judgment was entered on June 18, 1976, imposing a seventeen (17) year sentence.

The appellant was arrested in Louisville in late June of 1974, and charged with two (2) counts of armed robbery. One count of armed robbery was subsequently dismissed. He was convicted of one count of armed robbery allegedly committed at the Kwik Shop Food Mart on Greenwood Road in Jefferson County, Kentucky.

Three witnesses testified for the prosecution. The first was Detective Charles W. Baker, the investigating officer. He testified that on June 9, 1974, at approximately eleven thirty (11:30) p. m., he responded to an armed robbery call at the above location. Upon his arrival, he obtained a brief description of the robber from Marion Vaughan, the cashier at the store. The subject was then described as a white male between the ages of sixteen (16) and twenty (20), having long dirty dishwater-blonde hair, and being "kind of dirty" in appearance. Money and cigarettes were strewn about on the ground. According to Baker, the Canine Unit arrived shortly thereafter, and he accompanied Officer Malcolm Deuser and a

German Shepherd named "Genghis Khan" from the scene, around the side of the store, along a ditch and to the rear of the appellant's yard.

As no one would answer the door at the appellant's house, Baker returned to the store and again conversed with Marion Vaughan, the cashier. He showed her a book of photographs, from which she positively identified the appellant. Several other young men in the area are known to Detective Baker, but he was unable to state whether their pictures were in the photograph book. He did assert that Kary Kraemer had never been charged with this offense.

The second witness for the Commonwealth, Marion Vaughan, was the cashier at the store on the night in question. She testified that her assailant entered the store, asked for cigarettes, pointed a gun at her, took her money, backed up to the door, turned and ran. He had been in the store on different occasions before the incident and did not return after the robbery. At the time of the robbery, the assailant was dressed in blue jeans, a white t-shirt, a blue outer shirt, looked nervous, had bloodshot eyes with large tears in them, and long, dishwater brown-blonde hair. She picked the appellant's photograph from a point slightly more than halfway into the photograph book. She observed the dog arrive, sniff the money on the floor and depart.

The final Commonwealth's witness was Officer Malcolm Deuser of the Canine Unit. He testified that he could not recall being at the scene of the crime with his dog; that he had no records of such a run; and that he does not regularly patrol that district. In addition, Officer Deuser observed that his dog, the German Shepherd "Genghis Khan", is registered with the American Kennel Club and was initially trained by another officer. Deuser noted that the dog undergoes occasional refresher training and is adept at crushed vegetation tracking, but he has his limitations and will follow a more recent track which crosses the desired track. In addition, Deuser stated that the police department has since returned to the exclusive use of bloodhounds in tracking suspects.

Six witnesses were called by the appellant. There appears to be a conflict between the testimony of James Kozora, who is the manager of the store, and Marion Vaughan, the cashier.

Detective Baker testified that the appellant was the only person involved or charged. It appears that Kary Kraemer had been arrested and the charge filed away, along with several other individuals. Marion Vaughan identified the appellant by photographs, but they could not be produced at the time of the trial by the Commonwealth.

The appellant raises several questions, some of which are as follows:

I. DID THE FAILURE OF THE COURT TO EXCLUDE INCOMPETENT DOG–TRACKING EVIDENCE CONSTITUTE PREJUDICIAL AND REVERSIBLE ERROR?

II. WAS CONSTITUTIONAL ERROR COMMITTED WHEN PHOTOGRAPHS WHICH HAD BEEN THE BASIS OF PRE–TRIAL IDENTIFICATION WERE NOT PRODUCED AND WERE THE SUBJECT OF DIRECT EXAMINATION?

III. DID THE BLATANTLY ERRONEOUS ASSERTION BY THE COMMONWEALTH'S WITNESS THAT NO OTHER JUVENILES HAD BEEN ARRESTED FOR THE SAME CRIME VIOLATE THE APPELLANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW?

IV. WAS THE EVIDENCE AGAINST THE APPELLANT INSUFFICIENT TO SUPPORT A CONVICTION?

■ Much of the Commonwealth's case is based upon certain circumstantial evidence that a German Shepherd dog named "Genghis Khan" was used to track the appellant. It will be noted, however, that

Officer Deuser, the dog's manager, had neither records nor memory of the incident and the dog tracking evidence. With respect to bloodhounds, this Court has long imposed the requirement that an exacting foundation be laid before the evidence is admissible. *Pedigo v. Commonwealth*, 103 Ky. 141, 44 S.W. 143 (1898).

Marion Vaughan, the cashier at the food market, testified upon direct examination that she had picked the appellant's photograph from about halfway through a book of photographs. Detective Charles Baker, the investigating officer, testified to the same effect; however, James Kozora, the manager of the food market, stated that he did not see a book of photographs on the night in question. Despite a pretrial motion to produce, despite a motion to suppress the testimony regarding the photographs, and despite a motion for a mistrial on the ground that the testimony regarding the photographic identification was incompetent and prejudicial, the court allowed both Marion Vaughan and Detective Baker to testify that her in-court identification of the appellant was based partially on her pretrial photographic identification even though the photograph book was never introduced at the trial.

At the trial, Detective Baker testified that the appellant was the only one arrested for this crime, which was disputed by Kary Kraemer and others. The Commonwealth's attorney repeatedly used this in his closing argument to the prejudice of the appellant.

In *Davis v. Commonwealth*, 290 Ky. 745, 162 S.W.2d 778, 780 (1942), the court reversed a conviction for uttering a forged check, despite the unqualified identification by a witness who did not harbor personal animosity against the defendant. The court chose to believe the defendant's defense of alibi which was substantiated by certain neutral acquaintances. The opinion recited in part at page 746, 162 S.W.2d at page 780 is as follows:

> Where the verdict is against the weight of the evidence, as where the jury disregarded a defense which was almost conclusively established, we have not hesitated to reverse . . . An appellate court ought to be sensitive to the realities, and if it believes there may have been a miscarriage of justice it should use its extraordinary power and reverse a judgment that there be a fuller development of the facts so that the guilt of the accused, if he is guilty, may be more certainly determined. . . .

The jury verdict in this case was based upon too many unknowns, to-wit: the dog-tracking evidence; the loss of memory of the dog handler; the loss of the photograph book; and the fact that other juveniles were arrested for the same crime.

It appears that the Commonwealth's case rests on the in-court identification of the defendant by Marion Vaughan.

The judgment is reversed and the case is remanded for a new trial.

All concur.