NICHOL v EL PAR MOTOR SALES

1. EVIDENCE—IDENTIFICATION—AUTOMOBILES—CIRCUMSTANTIAL EVI-
   DENCE.
   The identity of an automobile may be established on circumstan-
   tial evidence, and such identity was properly established when
   an insurance adjuster testified to a serial number which
   matched the serial number of a bill of lading and invoice issued
   by the manufacturer to the defendant dealer and the automo-
   bile was identified on the invoice and bill of lading as a
   Belvedere II, which was consistent with the identification by
   persons who witnessed an accident, and such identification was
   not contradicted by other evidence.

2. AUTOMOBILES—TITLE—DELIVERY.
   Under the terms of a direct-dealer agreement providing that title
   to an automobile passed from the manufacturer to the direct
   dealer at the time of delivery to the dealer, the dealer's agent,
   or a carrier selected by the manufacturer, title passed when the
   car was delivered to a carrier for transportation to a cartage
   company for delivery to the direct dealer and an invoice and
   bill of lading had been made out indicating the "route", that
   the automobile had been "sold to" the dealer and that it had
   been "paid for by a bank", and under the direct-dealer agree-
   ment, the bill of lading, the invoice and the testimony a
   conclusion was justified regarding who was the "carrier" under
   the provisions of the bill of lading defining the "carrier" as
   "any person or corporation in possession of the property under
   the contract", where the possession of the vehicle at the time of
   the accident was undisputed.

3. CONTRACTS—CONFLICT OF LAWS—BURDEN OF PROOF.
   The burden of proving that the terms of an agreement executed

REFERENCES FOR POINTS IN HEADNOTES
[1] 8 Am Jur 2d, Automobiles and Highway Traffic § 994.
[2] 7 Am Jur 2d, Automobiles and Highway Traffic § 30.
[3] 7 Am Jur 2d, Automobiles and Highway Traffic § 24.
[4] 8 Am Jur 2d, Automobiles and Highway Traffic § 645.

in Michigan for the sale of an automobile to an Ohio dealer were superseded by the laws of Ohio is on the party who relies on the law of Ohio to establish the facts which would make Ohio law operable.

4. WORKMEN'S   COMPENSATION—INDEMNITY—STATUTES—EXCLUSIVE REMEDY.

An action for indemnity is allowable when brought by an automobile owner against an employer whose negligent employee while driving the owner's car injured another employee and the owner was required to pay to the injured employee under the owner-liability statute; and such an action is not barred because the employer has paid workmen's compensation to the injured employee.

Appeal from Wayne, Joseph A. Moynihan, Jr., J. Submitted Division 1 October 12, 1972, at Detroit. (Docket No. 11628.) Decided March 26, 1973.

Complaints by Albert C. Nichol and Aetna Casualty & Surety Company, intervening plaintiff, for damages resulting from an automobile collision, against Chrysler Corporation and El Par Motor Sales. Summary judgment for Chrysler. Third-party complaint for indemnification by El Par against Arnold Kort and Nu-Car Driveway. Judgment for Nichol against El Par and for El Par against Kort and Nu-Car. Third-party defendants Kort and Nu-Car appeal, and El-Par cross-appeals. Affirmed.

*Raymond J. DeRyck* and *Louisell & Gillis,* for plaintiff.

*Plunkett, Cooney, Rutt & Peacock,* for third-party plaintiff.

*Vandeveer, Doelle, Garzia, Tonkin & Kerr, P. C.,* for third-party defendants.

Before: V. J. BRENNAN, P. J., and LEVIN and O'HARA,* JJ.

LEVIN, J. The plaintiff, Albert C. Nichol, was injured in the course of his employment when an automobile he was driving collided with an automobile being driven by a fellow employee, Arnold Kort. Both drivers were employed by third-party defendant Nu-Car Driveway, and, when the accident occurred, were moving new automobiles from the factory on different routes which intersected.

Nichol collected workmen's compensation benefits from his employer, Nu-Car. He then commenced two actions under the civil liability act,[1] one against Chrysler Corporation, the manufacturer of the two automobiles, and the second against El Par Motor Sales, the retailer to whom the Kort automobile was, it is claimed, ultimately destined to be delivered under the "direct-dealer agreement" between Chrysler and El Par.

A summary judgment was entered dismissing the action commenced against Chrysler. Thereafter El Par filed a third party complaint for indemnification against Nu-Car and Kort.[2]

Nichol obtained a jury verdict for $75,000 against El Par. The trial judge also entered a judgment in favor of El Par, as third-party plaintiff, against Nu-Car and Kort for that amount. From an order denying motions for judgment notwithstanding the verdict and for a new trial, the third-party defendants, Nu-Car and Kort, appeal. El Par cross-appeals.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCLA 257.401; MSA 9.2101.

[2] Aetna Casualty & Surety Company, Nu-Car's workmen's compensation insurer, intervened as a plaintiff seeking reimbursement of benefits it had paid Nichol.

I

It is contended that Nichol failed to prove that the automobile Kort was driving had been sold by Chrysler to El Par.

Patrick M. Cleary, Jr., an insurance adjuster, identified the vehicle as having been sold by Chrysler to El Par.

It is claimed that the judge erred in allowing Cleary to testify because Cleary's name was not listed in the pretrial summary as a witness nor was his name submitted to opposing counsel within the 45-day period allowed under the pretrial order for amending the witness list. We conclude that the judge was justified, under the circumstances present in this case, in allowing Cleary to testify.

Nichol had not been able to obtain from Nu-Car any records concerning the Kort automobile. Nu-Car's office manager testified that he recalled the Nichol-Kort accident having taken place, and that his office would have received an accident report. However, Nu-Car could not produce it. Without the accident report, the Kort vehicle was difficult to identify other than it was a Belvedere II.

Cleary had prepared a memorandum based on Nu-Car's accident report. The judge ruled that the memorandum could be used to refresh Cleary's recollection regarding the details of the accident. After referring to this memorandum, Cleary identified the vehicle Kort was operating at the time of the accident by serial number.

Court Rule GCR 1963, 301.3 provides that the pretrial summary may be "modified at or before trial to prevent manifest injustice". This rule allows room for the exercise of discretion by the judge. See *Bednarsh v Winshall,* 374 Mich 667, 671

(1965). Under the circumstances, there was no abuse of that discretion.

It is contended that the jury's determination that the Kort vehicle was the same one destined for El Par was against the great weight of the evidence. The serial number testified to by Cleary, after consulting his memorandum, matched the serial number on the bill of lading and the invoice issued to El Par by Chrysler. The identification of the automobile as a Belvedere II on the invoice and the bill of lading was consistent with the identification of persons who witnessed the accident.

This identification evidence was not contradicted by other evidence. It is sufficient, in our view, to support the jury's verdict. Compare *Zolton v Rotter,* 321 Mich 1, 8–9 (1948), where the Michigan Supreme Court upheld a jury verdict on the identity of an automobile based on circumstantial evidence.

## II

It is contended alternatively that, even if the Kort automobile had been sold to and was destined to be delivered to El Par, there was insufficient evidence that legal title to the vehicle had passed from Chrysler to El Par.

The judge instructed the jury that El Par was not subject to liability unless it was the owner of the Kort automobile, and that, for purposes of the Civil Liability Act, an "owner" is "a person who holds the legal title of a vehicle". *Cf. Kelley v Citizens Mutual Insurance Co,* 19 Mich App 177, 180–181 (1969).

The Uniform Commercial Code (MCLA 440.2401[2]; MSA 19.2401[2]) provides that title

passes upon completion of the seller's performance "with reference to the physical delivery of the goods" unless "otherwise explicitly agreed". In this case the direct-dealer agreement between Chrysler and El Par purports to spell out when title passes. Paragraph 16 of the agreement (concerning "Title") provides that title to "products" sold by Chrysler passes on delivery to "direct dealer" (El Par), "direct dealer's agent", or "the carrier".

It is contended that there is no evidence that the Kort vehicle was delivered to El Par or to an agent of El Par and, therefore, the case rises or falls on the construction of the language "delivery to * * * the carrier".

The accident occurred while Kort was driving a vehicle from Nu-Car's parking area enroute to the lot of Square Deal Cartage. Nu-Car's function was to transport newly manufactured automobiles from the factory to long-haul cartage companies, like Square Deal. Appellants contend that *"the* carrier", within the meaning of the direct-dealer agreement, was Square Deal, and that the Kort vehicle never reached its lot.

Paragraph 11 of the direct-dealer agreement (concerning "Delivery") gives Chrysler broad control over the mode of delivery. It provides that Chrysler may deliver its "passenger cars" "for driveaway" to *"a carrier that Chrysler-Plymouth selects,* consigned to direct dealer" or to the "direct dealer at the factory, or at any other point that Chrysler-Plymouth may establish". (Emphasis supplied.)

The bill of lading and the invoice indicate that Square Deal Cartage was the "route" and that the automobile had been "sold to" El Par and "paid for by" First National Bank and Trust. The fine print on the bill of lading defines "carrier" as "any

person or corporation in possession of the property under the contract". It is undisputed that Nu-Car was in possession of the Kort vehicle at the time of the accident.

Under the terms of the direct-dealer agreement, the bill of lading, the invoice and the testimony, the conclusion that Nu-Car was a carrier, and "the carrier" within the meaning of the direct-dealer agreement, was justified.

### III

It is next contended that paragraph 16 (concerning "Title") of the direct-dealer agreement is superseded by the statutory law of Ohio, the state in which El Par is located.

Paragraph 30 of the agreement (concerning "Legal Interpretation") provides that Michigan law controls the interpretation of the agreement unless part of the agreement conflicts with the law of any state "having jurisdiction". In the event of conflict, paragraph 30 provides that the offending part of the agreement shall have no force and effect in that state.

It is claimed that because El Par is located in Ohio and Ohio was the destination of the automobile, Ohio has jurisdiction.

The terms of the direct-dealer agreement are claimed to be in conflict with Ohio Stat Ann § 4505.04, which provides that no person acquiring a motor vehicle shall acquire any right, title, claim or interest in the vehicle "until such person has had issued to him a certificate of title to said motor vehicle, or delivered to him a manufacturer's or importer's certificate for it".

Putting aside the questions whether the State of Ohio has "jurisdiction" within the meaning of the

direct-dealer agreement and whether there is "conflict" between the law of Ohio and the result reached by the jury in this case, it has not been shown whether a manufacturer's certificate was "delivered" to El Par. The burden was on El Par and Nu-Car, who rely on the law of Ohio, to establish the facts which could make Ohio law operable. In this connection, it is relevant that there was evidence that the automobile had been "sold to" El Par and "paid for by" First National Bank and Trust.

## IV

Appellants challenge the jury's verdict that Kort was negligent in the operation of his vehicle and that Nichol was not contributorily negligent.

Nichol and Kort were driving on different routes which intersected. A shanty at the intersection obstructed the view of both drivers. There was testimony that Nichol's automobile was stopped in the intersection when it was struck by the Kort automobile which reportedly was traveling at upwards of 25 miles per hour.

We conclude on our review of the testimony that, in the light of the caution it is claimed Nichol exercised in entering the intersection and the speed at which Kort was claimed to be traveling shortly before the collision, the jury could properly find that Nichol was proceeding in the exercise of the requisite caution before entering the intersection and that Kort failed to exercise due care.

## V

Nu-Car finally contends that to allow an action for indemnity would be to allow double recovery

against an employer violative of the spirit of the Workmen's Compensation Act. In *Dale v Whiteman,* 388 Mich 698 (1972), this issue was recently resolved contrary to Nu-Car's contention. In the cited case a car wash employee, who was injured by a customer's automobile that was being driven through the car wash by another employee, commenced an action and obtained a judgment against the customer. The Michigan Supreme Court held that the customer was entitled to indemnity from the employer of the two employees for the damages he, the customer, as the owner of the automobile being driven by the negligent driver-employee, was required to pay to the injured employee.

Affirmed.

All concurred.